892 A.2d 663

ANNE PASQUA, RAY TOLBERT AND MICHAEL ANTHONY, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFFS–APPELLANTS, v. HON. GERALD J. COUNCIL AND HON. F. LEE FORRESTER, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY AS JUDGES OF THE SUPERIOR COURT AND ON BEHALF OF ALL SUPERIOR COURT JUDGES OF THE STATE OF NEW JERSEY WHO HAVE IN THE PAST CONDUCTED ABILITY TO PAY HEARINGS OR WHO WILL IN THE FUTURE CONDUCT ABILITY TO PAY HEARINGS, HON. DEBORAH PORITZ, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS CHIEF JUSTICE OF THE SUPREME COURT OF NEW JERSEY AND HON. RICHARD J. WILLIAMS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ADMINISTRATIVE DIRECTOR OF THE COURTS OF THE STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS.

Argued October 24, 2005—Decided March 8, 2006.

*David Perry Davis*, argued the cause for appellants.

*Patrick DeAlmeida*, Assistant Attorney General, argued the cause for respondents (*Peter C. Harvey*, Attorney General of New

Jersey, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel).

*Melville D. Miller, Jr.,* President, argued the cause for amicus curiae Legal Services of New Jersey.

*David B. Rubin,* argued the cause for amicus curiae New Jersey State Bar Association (*Stuart A. Hoberman,* President, attorney).

Justice ALBIN delivered the opinion of the Court.

The right to counsel is among our most precious of constitutional rights because it is the necessary means of securing other fundamental rights. It has long been recognized that the right to a fair trial would be an empty promise without the right to counsel. In this appeal, we must determine whether indigent parents charged with violating child support orders and subject to coercive incarceration at ability-to-pay hearings have a right to appointed counsel. We now hold that our Federal and State Constitutions guarantee that right.

## I.

### A.

Plaintiffs Anne Pasqua, Ray Tolbert, and Michael Anthony are parents who were arrested for not complying with their court-ordered child support obligations. Following their arrests, plaintiff Pasqua was brought before defendant Superior Court Judge F. Lee Forrester, and plaintiffs Tolbert and Anthony were brought before defendant Superior Court Judge Gerald J. Council. Those judges conducted enforcement hearings pursuant to *Rule* 1:10–3 to determine plaintiffs' ability to pay their support obligations. The essential purpose of those proceedings was to determine whether plaintiffs were in willful disobedience of previously entered court orders. At the hearings, plaintiffs were not represented by counsel. They also were not advised of a right to counsel and, if indigent, of a right to appointed counsel. Both Judge

Forrester and Judge Council set an amount of support arrears to be paid by plaintiffs as a condition of their release.

Plaintiff Pasqua was ordered to pay $3,400 in child support arrears as a condition of her release. She spent fifteen days in jail in addition to the three days she served before her hearing until she was freed without making any payment. As of January 2003, her child support obligations totaled $12,886.

Plaintiff Tolbert was ordered to pay $10,000 of his arrears to secure his release. He spent fifty-six days in jail in addition to the seventeen days he served waiting for a hearing before he was freed, apparently without making a payment toward his arrears. As of January 2003, Tolbert owed $134,700 in child support obligations.

Plaintiff Anthony served twenty-four days in jail before he appeared at an enforcement hearing and was released after paying $125 toward his arrears of $49,234. At the time of his release, he was warned that if he missed two future support payments an arrest warrant would issue, and indeed, when Anthony defaulted, one did. On that occasion, Anthony made another payment toward his arrears and the warrant was vacated. As of January 2003, Anthony remained unable to satisfy his $145 weekly support obligations.

In June 2000, plaintiffs filed a lawsuit in the United States District Court for the District of New Jersey seeking relief under 42 *U.S.C.A.* § 1983 and naming as defendants Judge Forrester; Judge Council; Deborah Poritz, Chief Justice of the Supreme Court of New Jersey; and Richard Williams, former Administrative Director of the Courts. In their complaint, plaintiffs sought a declaration that the Due Process Clause of the Fourteenth Amendment guarantees the right to appointed counsel to indigent parents facing the loss of their liberty at child support enforcement proceedings. Plaintiffs also sought to enjoin defendants from using incarceration as a means of coercing compliance with support orders until indigent parents are provided appointed counsel. Plaintiffs asserted that injunctive relief is required be-

cause they still are indigent, cannot pay their support obligations, and face the potential loss of their freedom at future enforcement hearings without the assistance of counsel.

All three plaintiffs alleged that they were incarcerated in violation of their right to counsel due to policies and procedures promulgated by the Chief Justice and the Administrative Director of the Courts. In addition to the foregoing relief, plaintiffs also requested class certification for those similarly situated parents facing coercive incarceration at child support enforcement hearings.

The federal district court dismissed the complaint, reasoning that federal courts ordinarily should abstain from intervening in pending state cases, as explained in *Younger v. Harris*, 401 *U.S.* 37, 91 *S.Ct.* 746, 27 *L.Ed.2d* 669 (1971). The Third Circuit Court of Appeals affirmed, ruling that to grant "relief here would address issues that plaintiffs can raise in their own cases currently pending in the New Jersey courts."[1] *Anthony v. Council*, 316 *F.*3d 412, 421 (3d Cir.2003).

In February 2003, plaintiffs filed the same complaint in the Superior Court, Law Division, along with an order to show cause seeking preliminary restraints. Judge Feinberg declined plaintiffs' request for emergent relief, but set the matter down for oral argument. Defendants then filed a motion to dismiss the complaint. Because there was no apparent dispute over the factual allegations in the complaint, after hearing oral argument, Judge

---

[1] The Third Circuit determined that plaintiffs retrospectively "had ample opportunity to raise any constitutional claims at their state contempt hearings" and "could have appealed any adverse decision to higher courts." *Anthony v. Council*, 316 *F.*3d 412, 420 (3d Cir.2003). The federal appeals court also determined that plaintiffs prospectively could raise their constitutional claims in pending state proceedings, noting that "[e]ach plaintiff here is party to an open case that will not terminate until the child support order is finally discharged." *Ibid.* The court concluded that it was "confident that any constitutional challenge to state court practice would receive proper consideration by the New Jersey courts." *Id.* at 423.

Feinberg directly addressed the legal issue raised. In doing so, she denied plaintiffs' application for class certification.

## B.

In a comprehensive opinion, Judge Feinberg determined "that the Fourteenth Amendment due process clause requires the appointment of counsel for an indigent child support obligor who faces incarceration." Judge Feinberg rested her decision primarily on *Lassiter v. Department of Social Services,* 452 *U.S.* 18, 26–27, 101 *S.Ct.* 2153, 2159, 68 *L.Ed.*2d 640, 649 (1981), which held that in a civil proceeding there is a "presumption" in favor of the right to counsel when an indigent litigant is facing a "depriv[ation] of his physical liberty." Judge Feinberg distinguished her ruling from *Scalchi v. Scalchi,* 347 *N.J.Super.* 493, 496, 790 *A.2d* 943 (App.Div.2002), which held that indigent parents in arrears in their child support obligations have no Sixth Amendment right to counsel at enforcement hearings. The *Scalchi* panel reasoned that the Sixth Amendment's right to counsel clause did not apply in a "non-criminal setting" and that "current" New Jersey law did not "require that counsel be assigned to an indigent in a support enforcement proceeding." *Ibid.*

Judge Feinberg did not feel bound by *Scalchi* because that decision did not premise its denial of the right to counsel on Fourteenth Amendment due process grounds or the *Lassiter* decision. Judge Feinberg noted that the federal circuit courts that had "addressed this question have determined that due process requires an automatic appointment of counsel for an indigent facing incarceration in a civil contempt proceeding" and that many state courts had reached "the identical conclusion."

As a result of her finding, Judge Feinberg ordered that parents facing potential incarceration at enforcement proceedings for noncompliance with child support obligations must be advised of their right to counsel. Judge Feinberg also ordered that those parents determined to be indigent must be appointed counsel upon their request. In addition, she ruled that indigent parents arrested for

violating child support orders must be brought before a court and assigned counsel within seventy-two hours of their arrests.

Judge Feinberg observed that the Public Defender's Office is not "required by statute to represent indigent child-support obligors who face incarceration," and that funding for such representation "rests solely and exclusively with the Legislature." In all other respects, Judge Feinberg referred the implementation of her opinion to the Administrative Office of the Courts.

Judge Feinberg also denied plaintiffs' request for attorney's fees and costs pursuant to 42 *U.S.C.A.* § 1988, finding that defendants were acting within their judicial capacities and therefore clothed with judicial immunity. She found no causal link between plaintiffs' right-to-counsel claims and any acts or omissions of defendants Chief Justice Poritz and Director Williams. She concluded that the complaint did not allege that those defendants "had any direct personal participation in the decision not to appoint counsel" and that there was no evidence that they had "developed or implemented any administrative policies that compromised a child support obligor's right to the appointment of counsel."

Pending appeals filed by both defendants and plaintiffs, the Administrative Office of the Courts (AOC) prepared a protocol putting into effect Judge Feinberg's ruling. The protocol provided that (1) before the commencement of a child support enforcement hearing, the Probation Division must determine whether "coercive incarceration is a reasonable likelihood" and, if so, whether a parent charged with nonsupport is indigent; (2) every parent must be advised of his right to retain counsel; and (3) if the court finds a parent to be indigent, it "may proceed with the hearing, making appropriate findings and ordering appropriate relief," but until publicly funded counsel is made available, an indigent parent may not be incarcerated to coerce compliance with a child support order. The AOC also promulgated guidelines requiring that parents arrested for nonsupport be taken before a

judge as soon as possible, but, in any event, within seventy-two hours of their arrest.

## C.

In an unpublished opinion, the Appellate Division reversed, finding Judge Feinberg's decision to be in direct conflict with *Scalchi* and therefore "contrary to binding precedent." According to the panel, *Scalchi* broadly "rejected the contention that the United States Constitution requires that counsel be appointed for indigent child support obligors who face the threat of incarceration pursuant to *R.* 1:10–3." Although the *Scalchi* court engaged in a Sixth Amendment analysis and Judge Feinberg in a Fourteenth Amendment due process analysis, the panel concluded that the issues in the two cases were the same and, therefore, the results should have been the same. The panel declined to address the merits of the constitutional issue, stating that to do so "would be turning a blind eye to the very nature of precedent and encouraging trial judges to ignore appellate decisions with which they disagree."

The panel "perceive[d] no imminent danger to individual rights resulting from [its] decision not to address the merits," accepting "the frank admission of plaintiffs' counsel, at oral argument, that a judge can adequately protect an obligor by conducting a thorough and searching ability-to-pay hearing." Supposing that to be true, the panel reasoned that the "solution to plaintiffs' perceived problem can be found readily through judicial education and training, and need not implicate the right to appointed counsel." In reversing, the panel did not intend to "suggest any impediment to the voluntary adoption of the provisions of the protocol" adopted by the AOC. In light of its decision, the panel deemed plaintiffs' appeal from the denial of attorney's fees to be moot.

In a concurring opinion, Judge Carchman determined that the constitutional issue did not have to be addressed because of "plaintiffs' counsel's concession at oral argument that a searching inquiry by a trial judge at the ability-to-pay hearing protects an

obligor's rights." Judge Carchman also framed the issue as "implicating judicial performance rather than the constitutional right to counsel."

We granted plaintiffs' petition for certification, 183 *N.J.* 587, 874 *A.*2d 1106 (2005), and plaintiffs' motion for a stay of the Appellate Division decision. We also granted motions filed by the New Jersey State Bar Association and Legal Services of New Jersey to participate as amici curiae.

## II.

Plaintiffs essentially claim that coercive incarceration was a futile exercise because they were too destitute to pay their support obligations. Without the assistance of counsel, they argue, they could not prove their inability to pay their arrears and thus were denied a fair hearing. Fearing that they will be arrested again for nonsupport, they ask that this Court require appointment of counsel for any indigent parent facing a jail term at a child support enforcement hearing.

Defendants, on the other hand, insist that analyzing a parent's resources, expenses, and ability to earn income is "rudimentary in nature" and therefore maintain that an indigent does not require the assistance of counsel at a child support enforcement hearing. Defendants are confident that "Superior Court Judges can make a searching and detailed inquiry" at those hearings and provide indigent parents "with sufficient protection from unwarranted coercive incarceration." Any shortcomings, defendants assure us, can be remedied through "judicial education and training."

We cannot accept the regime suggested by defendants as an acceptable constitutional safeguard for an indigent litigant facing incarceration in a judicial proceeding. The good intentions and fair-mindedness of a Superior Court judge are not an adequate constitutional substitute for a defendant's right to counsel when a jail term is at stake. Moreover, we are not convinced that child support enforcement proceedings are so "rudimentary" that indigent parents would not benefit from the assistance of counsel.

Our high level of confidence in our judiciary cannot be the basis for depriving an indigent litigant exposed to imprisonment of his federal and state constitutional right to counsel.

## A.

We begin with a brief discussion of the nature of child support enforcement proceedings. That process begins when a parent fails to abide by a court-ordered child support obligation. *R.* 5:7–5(a). When the parent's arrears are equal to or greater than fourteen days of child support, the Probation Division is required to "file a verified statement setting forth the facts establishing disobedience of the [court's] order." *Ibid.* The noncompliant parent may be subject to either a criminal contempt proceeding pursuant to *Rule* 1:10–2, or a proceeding in aid of litigants' rights pursuant to *Rule* 1:10–3, or both.

■ A contempt proceeding under *Rule* 1:10–2 is "essentially criminal" in nature and is instituted for the purpose of punishing a defendant who fails to comply with a court order. *Essex County Welfare Bd. v. Perkins,* 133 *N.J.Super.* 189, 195, 336 *A.*2d 16 (App.Div.) (citing *In re Reeves,* 60 *N.J.* 504, 291 *A.*2d 369 (1972); *In re Carton,* 48 *N.J.* 9, 222 *A.*2d 92 (1966); *N.J. Dep't of Health v. Roselle,* 34 *N.J.* 331, 169 *A.*2d 153 (1961); *Pierce v. Pierce,* 122 *N.J.Super.* 359, 300 *A.*2d 568 (App.Div.1973)), *certif. denied,* 68 *N.J.* 161, 343 *A.*2d 449 (1975). At such a proceeding, the "[d]efendant is entitled to counsel and other safeguards appropriate to criminal proceedings." *Ibid.*

■ On the other hand, a proceeding to enforce litigants' rights under *Rule* 1:10–3 "is essentially a civil proceeding to coerce the defendant into compliance with the court's order for the benefit of the private litigant" and "incarceration may be ordered only if made contingent upon defendant's continuing failure to comply with the order." *Ibid.* In this case, we are concerned with enforcement proceedings under *Rule* 1:10–3, which are commonly instituted to bring defaulting parents in compliance with child

support orders. Judicial Council, *Use of Warrants and Incarceration in the Enforcement of Child Support Orders* 1 (Feb. 26, 2004).[2]

### B.

We now address whether the Federal Constitution requires the appointment of counsel for an indigent parent facing incarceration at a child support enforcement hearing. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *U.S. Const.* amend. XIV, § 1. It is well established that an indigent defendant subject to imprisonment in a state criminal case has a right to assigned counsel pursuant to the Sixth Amendment as applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Argersinger v. Hamlin,* 407 *U.S.* 25, 92 *S.Ct.* 2006, 32 *L.Ed.*2d 530 (1972); *Gideon v. Wainwright,* 372 *U.S.* 335, 83 *S.Ct.* 792, 9 *L.Ed.*2d 799 (1963). The right to

---

[2] When the Probation Division moves to enforce a child support order pursuant to *Rule* 1:10–3, the parent in arrears typically will receive notice to appear before a Child Support Hearing Officer, who is charged with the initial responsibility of enforcing the court's order. *R.* 5:25–3(b), (c). At the proceeding, the parent is given the opportunity to present testimony and evidence concerning his or her ability to pay the support required. *R.* 5:25–3(c)(2). The Hearing Officer evaluates the evidence presented, determines whether the parent failed to comply with the child support order, and, if so, the extent of noncompliance, and then makes a recommendation to the Presiding Judge of the Family Part for enforcement of the order. *R.* 5:25–3(c)(8), (d)(1); Judicial Council, *Use of Warrants and Incarceration in the Enforcement of Child Support Orders,* 1–2 (Feb. 26, 2004). The Hearing Officer may recommend that the court issue a warrant for a party who has failed to appear in response to a notice. *R.* 5:25–3(c)(11). That officer also may recommend that a parent who has failed to comply with a support order be incarcerated. *R.* 5:25–3(c)(10)(B). The interested parties may object to the recommendations, which will result in an immediate de novo hearing (not based on the record below) before a Superior Court judge pursuant to *Rule* 5:25–3(d)(2). At that hearing, before ordering coercive incarceration, the court must find that the parent was capable of providing the required support, but willfully refused to do so. *See Pierce v. Pierce,* 122 *N.J.Super.* 359, 361, 300 *A.*2d 568 (App.Div.1973).

assigned counsel, however, does not depend solely on whether a case is classified as criminal or civil. *Lassiter v. Dep't of Soc. Servs., supra*, 452 *U.S.* at 25, 101 *S.Ct.* at 2159, 68 *L.Ed.*2d at 648 (citing *In re Gault*, 387 *U.S.* 1, 41, 87 *S.Ct.* 1428, 1451, 18 *L.Ed.*2d 527, 554 (1967)). It is "the defendant's interest in personal freedom, and not simply the special Sixth and Fourteenth Amendments right to counsel in criminal cases, which triggers the right to appointed counsel." *Id.* at 25, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 648. After all, the adverse consequences of a particular civil proceeding can be as devastating as those resulting from the conviction of a crime.

■ In *Lassiter*, the United States Supreme Court considered whether the Due Process Clause afforded an indigent litigant the right to assistance of appointed counsel at termination of parental rights hearings. *Id.* at 24, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 647–48. While not finding an absolute right to counsel at such hearings and leaving to the trial courts to determine when counsel should be assigned on a case-specific basis, the Court addressed the constitutional underpinnings of the right to counsel in civil actions. *Id.* at 31–32, 101 *S.Ct.* at 2162, 68 *L.Ed.*2d at 652. The Court began by recognizing that "due process" is nothing more than affording "fundamental fairness" to a litigant in a particular situation. *Id.* at 24, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 648. In assessing whether the Fourteenth Amendment guaranteed the right to counsel at termination hearings, the Court turned to the analysis propounded in *Mathews v. Eldridge*, 424 *U.S.* 319, 335, 96 *S.Ct.* 893, 903, 47 *L.Ed.*2d 18, 33 (1976). The *Mathews* "due process" analysis requires consideration of "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter, supra*, 452 *U.S.* at 27, 101 *S.Ct.* at 2159, 68 *L.Ed.*2d at 649 (citing *Mathews, supra*, 424 *U.S.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33).

■ With that construct in mind, the Court explained that "[t]he pre-eminent generalization that emerges from [the] Court's precedents on an indigent's right to appointed counsel is that such

a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation." *Id.* at 25, 101 *S.Ct.* at 2158, 68 *L.Ed.*2d at 648. Thus, there is a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26–27, 101 *S.Ct.* at 2159, 68 *L.Ed.*2d at 649. The *Mathews* factors must be weighed against the presumptive right to appointed counsel that attaches when an indigent is subject to incarceration. *Id.* at 27, 101 *S.Ct.* at 2159, 68 *L.Ed.*2d at 649.

Although the United States Supreme Court has yet to address the issue before us, several United States Courts of Appeals have held that due process requires appointed counsel for indigent litigants facing incarceration at support enforcement proceedings. *See Walker v. McLain,* 768 *F.*2d 1181, 1185 (10th Cir.1985) (holding that "due process does require, at a minimum, that an indigent defendant threatened with incarceration for civil contempt for nonsupport, who can establish indigency under the normal standards for appointment of counsel in a criminal case, be appointed counsel to assist him in his defense"), *cert. denied,* 474 *U.S.* 1061, 106 *S.Ct.* 805, 88 *L.Ed.*2d 781 (1986); *Sevier v. Turner,* 742 *F.*2d 262, 266–67 (6th Cir.1984) (holding that father incarcerated for failure to pay child support was entitled to counsel during civil contempt proceeding); *Ridgway v. Baker,* 720 *F.*2d 1409, 1415 (5th Cir.1983) (holding that unrepresented father imprisoned for contempt for failure to pay child support had right to appointed counsel because "defendant who is threatened with jail has the right to a lawyer").

Relying on the Fourteenth Amendment Due Process Clause, many state courts likewise have concluded that indigent litigants facing incarceration at support hearings have a right to appointed counsel.[3] Those jurisdictions recognize the strong government interest in enforcing support orders in furtherance of a state's

---

[3] *See, e.g., Ex parte Parcus,* 615 *So.*2d 78, 84 (Ala.1993) (per curiam) (holding "that in a contempt proceeding for nonsupport an indigent defendant may not be incarcerated if the defendant has not been informed of the right to counsel or

parens patriae responsibility to protect the welfare of children—one of the *Mathews* factors. Nonetheless, when weighing that factor against the other *Mathews* factors—the private interest in personal freedom and the need to ensure accurate proceedings—the presumption in favor of the right to appointed counsel cannot be overcome.

---

has been denied counsel"); *Black v. Div. of Child Support Enforcement,* 686 A.2d 164, 168 (Del.1996) (holding that "due process requires counsel be appointed for the indigent obligor" who "faces the possibility of incarceration"); *McNabb v. Osmundson,* 315 N.W.2d 9, 10, 14 (Iowa 1982) (holding that "counsel must be appointed" to "indigent facing a jail sentence in a contempt of court proceeding" for nonpayment of child support); *Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228, 237 (1983) (holding that "under the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, an indigent defendant in a civil contempt proceeding cannot be sentenced to incarceration unless he has been afforded the right to appointed counsel"); *Mead v. Batchlor,* 435 Mich. 480, 460 N.W.2d 493, 504–05 (1990) (holding that "Due Process Clause of the Fourteenth Amendment precludes incarceration of an indigent defendant in a contempt proceeding for nonpayment of child support if the indigent has been denied the assistance of counsel"); *Cox v. Slama,* 355 N.W.2d 401, 403 (Minn.1984) (holding that "counsel must be appointed for indigent defendants facing civil contempt for failure to pay child support"); *Allen v. Sheriff of Lancaster County,* 245 Neb. 149, 511 N.W.2d 125, 127 (1994) (noting that "court has held that under the U.S. Constitution, an indigent litigant has a right to appointed counsel when, as a result of the litigation, he may be deprived of his physical liberty"); *McBride v. McBride,* 334 N.C. 124, 431 S.E.2d 14, 19 (1993) (holding that "principles of due process embodied in the Fourteenth Amendment require that, absent the appointment of counsel, indigent civil contemnors may not be incarcerated for failure to pay child support arrearages"); *State ex rel. Gullickson v. Gruchalla,* 467 N.W.2d 451, 453 (N.D. 1991) (holding "that indigent defendants in civil contempt proceedings should be granted counsel at state expense when, if they lose, they will likely be deprived of their physical liberty"); *Tetro v. Tetro,* 86 Wash.2d 252, 544 P.2d 17, 19 (1975) (holding that "[w]hatever due process requires when other types of deprivation of liberty are potentially involved, when a judicial proceeding may result in the defendant being physically incarcerated, counsel is required regardless of whether the trial is otherwise 'criminal' in nature"); *Smoot v. Dingess,* 160 W.Va. 558, 236 S.E.2d 468, 471 (1977) ("Regardless of whether a contempt proceeding is civil or criminal, a defendant has the right to be represented by counsel, and if he is indigent counsel must be appointed to represent him."); *State v. Pultz,* 206 Wis.2d 112, 556 N.W.2d 708, 715 (1996) (holding that "a defendant in a remedial contempt proceeding, if indigent, is entitled to appointed counsel at public expense").

When an indigent litigant is forced to proceed at an ability-to-pay hearing without counsel, there is a high risk of an erroneous determination and wrongful incarceration. However seemingly simple support enforcement proceedings may be for a judge or lawyer, gathering documentary evidence, presenting testimony, marshalling legal arguments, and articulating a defense are probably awesome and perhaps insuperable undertakings to the uninitiated layperson. The task is that much more difficult when the indigent must defend himself after he has already been deprived of his freedom. *See, e.g., Walker, supra,* 768 *F.*2d at 1184 ("The issues in a proceeding for wilful nonsupport are not so straightforward that counsel will not be of assistance in insuring the accuracy and fairness of the proceeding. This is particularly true where the petitioner is indigent and is attempting to prove his indigency as a defense to wilfulness.").

Defendants argue that plaintiffs possessed the keys to the jailhouse door. That makes sense only if one accepts the notion that plaintiffs had the wherewithal to pay their child support arrears. It is the purpose of the child support hearing to establish that very point. It is at that hearing that an indigent parent untrained in the law, and perhaps anxious and inarticulate, needs the guiding hand of counsel to help prove that his failure to make support payments was not due to willful disobedience of a court order but rather to his impecunious circumstances. *See Powell v. Alabama,* 287 *U.S.* 45, 69, 53 *S.Ct.* 55, 64, 77 *L.Ed.* 158, 170 (1932) ("Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he had a perfect one.").

We reject the Appellate Division's contentions that "a judge can adequately protect an [indigent parent] by conducting a thorough and searching ability-to-pay hearing" or that the "solution to plaintiffs' perceived problem can be found readily through judicial education and training, and need not implicate the right to appointed counsel." However well intentioned and scrupulously fair

a judge may be, when a litigant is threatened with the loss of his liberty, process is what matters. A person of impoverished means caught within the tangle of our criminal or civil justice system and subject to a jail sentence is best protected by an adversarial hearing with the assistance of a trained and experienced lawyer. Although requiring counsel may complicate the procedures pertaining to enforcement of court orders, it protects important constitutional values, including the fairness of our civil justice system.

Accordingly, we conclude that the Fourteenth Amendment Due Process Clause mandates the appointment of counsel to assist parents found to be indigent and facing incarceration at child support enforcement hearings. At such hearings, courts must advise litigants in jeopardy of losing their freedom of their right to counsel and, if indigent, of their right to appointed counsel.[4]

## C.

We reach the same result under our State Constitution. Article I, Paragraph 1 of the New Jersey Constitution provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and pro-

---

[4] Although not addressed by the parties, § 1983 may not have been the proper vehicle for seeking injunctive relief. Section 1983 provides "that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, *injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*" 42 *U.S.C.A.* § 1983 (emphasis added). The plain language of the statute might suggest that plaintiffs were not allowed to seek injunctive relief. Defendants, however, did not object to plaintiffs' suit on that ground. The issues raised in plaintiffs' complaint have been fully briefed, argued, and are ripe for our determination. Moreover, we are deciding this case not only on the basis of the Federal Constitution, but also on an independent state ground. To avoid unnecessarily delaying the adjudication of an issue of paramount constitutional importance, we address not only the merits of plaintiffs' constitutional claim, but the remedies as well. *See Kelley v. Curtiss*, 16 *N.J.* 265, 269–70, 108 A.2d 431 (1954).

tecting property, and of pursuing and obtaining safety and happiness." *N.J. Const.* art. I, ¶ 1. Although the text of the New Jersey Constitution does not contain a due process clause in language comparable to the Fifth and Fourteenth Amendments of the Federal Constitution, we have found that the right to due process of law is implicit in Article I, Paragraph 1. *State v. Feaster,* 184 *N.J.* 235, 250 n. 3, 877 *A.2d* 229 (2005); *see also Greenberg v. Kimmelman,* 99 *N.J.* 552, 568, 494 *A.2d* 294 (1985) ("[A]rticle 1, paragraph 1, like the fourteenth amendment, seeks to protect against injustice and against the unequal treatment of those who should be treated alike. To this extent, article 1 safeguards values like those encompassed by the principles of due process and equal protection.").[5]

Under the due process guarantee of the New Jersey Constitution, the right to counsel attaches even to proceedings in which a litigant is not facing incarceration. For example, under our State Constitution, convicted sex offenders must be notified of their right to retain counsel and, if indigent, appointed counsel at Megan's Law tier classification hearings. *Doe v. Poritz,* 142 *N.J.* 1, 30–31, 106, 662 *A.2d* 367 (1995). At those hearings, the court determines the scope of community notification of such information as a sex offender's name, and home and work address, by

---

[5] Generally, the right to appointed counsel for indigent litigants has received more expansive protection under our state law than federal law. *Compare Lassiter, supra,* 452 *U.S* at 31–32, 101 *S.Ct.* at 2162, 68 *L.Ed.*2d at 652 (declining to adopt holding that "Constitution requires ... appointment of counsel [to indigents] in every parental termination proceeding"), *with Crist v. N.J. Div. of Youth & Family Servs.,* 135 *N.J.Super.* 573, 575, 343 *A.2d* 815 (App.Div.1975) (per curiam) (affirming decision that courts "should assign counsel without cost to indigent parents who are subjected to proceedings which may result in either temporary loss of custody or permanent termination of their parental rights"); *and compare Scott v. Illinois,* 440 *U.S.* 367, 369, 99 *S.Ct.* 1158, 1160, 59 *L.Ed.*2d 383, 386 (1979) (holding that defendant charged with misdemeanor has no constitutional right to counsel where no sentence of imprisonment is imposed), *with State v. Hrycak,* 184 *N.J.* 351, 362, 877 *A.2d* 1209 (2005) (providing for right to counsel in DWI cases, regardless of whether sentence of imprisonment is imposed, because defendant "faces a 'consequence of magnitude' " (quoting *Rodriguez v. Rosenblatt,* 58 *N.J.* 281, 295, 277 *A.2d* 216 (1971))).

assigning the offender to one of three tiers. *Id.* at 23–25, 662 *A.*2d 367. Although sex offenders are subject only to expanded stigmatization of their reputations in their communities depending on their tier classification, they have a due process "liberty interest" protected under Article I, Paragraph 1, triggering the right to counsel. *Id.* at 30–31, 104–06, 662 *A.*2d 367.

In addition, without referencing our State Constitution, we held in *Rodriguez v. Rosenblatt* that "as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." 58 *N.J.* 281, 295, 277 *A.*2d 216 (1971); *see also R.* 7:3–2(b) ("If the court is satisfied that the defendant is indigent and that the defendant faces a consequence of magnitude . . ., the court shall assign the municipal public defender to represent the defendant."). In *Rodriguez*, we considered "the substantial loss of driving privileges" as one type of "serious consequence" that would warrant assigning counsel to an indigent defendant. 58 *N.J.* at 295, 277 *A.*2d 216. We acknowledged "[t]he importance of counsel in an accusatorial system," underscoring that in a case with "any complexities[,] the untrained defendant is in no position to defend himself," and that in a case without "complexities, his lack of legal representation may place him at a disadvantage." *Rodriguez, supra,* 58 *N.J.* at 295, 277 *A.*2d 216. Relying on the principle of "simple justice" enunciated in *Rodriguez,* the Appellate Division in *Crist v. New Jersey Division of Youth & Family Services* ruled that the temporary loss or permanent termination of an indigent parent's rights to his or her child in a judicial proceeding is a consequence of magnitude requiring the assignment of counsel. 135 *N.J.Super.* 573, 575, 343 *A.*2d 815 (App.Div. 1975); *see also State v. Hermanns,* 278 *N.J.Super.* 19, 29, 650 *A.*2d 360 (App.Div.1994) (holding that significant monetary sanctions "give[ ] rise to the right to counsel under *Rodriguez*").

We also have held that due process guarantees the assignment of counsel to indigents in involuntary civil commitment proceed-

ings. *In re S.L.*, 94 *N.J.* 128, 136–37, 462 *A.*2d 1252 (1983); *see also N.J.S.A.* 30:4–27.11 (affording patient involuntarily committed to psychiatric facility who is "unable to afford an attorney, the right to be provided with an attorney paid for by the appropriate government agency"). *Cf. Perlmutter v. DeRowe*, 58 *N.J.* 5, 17, 274 *A.*2d 283 (1971) (observing that civil arrest pursuant to writ of *capias ad respondendum* "is substantially analogous to arrest under a criminal complaint and a defendant should have all the same procedural rights and protections as if he were arrested on a criminal charge for the same fraud upon which the civil action and the [*capias ad respondendum*] are based").

 We can find no principled reason why an indigent facing loss of motor vehicle privileges or a substantial fine in municipal court, termination of parental rights in family court, or tier classification in a Megan's Law proceeding would be entitled to counsel under state law but an indigent facing jail for allegedly willfully refusing to pay a child support judgment would not. Moreover, the indigent subject to incarceration for failure to pay support can hardly be distinguished from the indigent conferred with the right to counsel in an involuntary civil commitment hearing. We are persuaded that the due process guarantee of the New Jersey Constitution compels the assignment of counsel to indigent parents who are at risk of incarceration at child support enforcement hearings.

### III.

### A.

We now consider plaintiffs' contention that because they are prevailing parties under 42 *U.S.C.A.* § 1988(b), they are entitled to recover their reasonable attorney's fees and costs. Section 1988(b) provides that

the court, in its discretion, may allow the prevailing party [in a § 1983 action], other than the United States, a reasonable attorney's fee as part of the costs, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any*

*costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.*
[42 *U.S.C.A.* § 1988(b) (emphasis added).]

As earlier determined, indigent parents at child support enforcement hearings must be advised of their right to appointed counsel. It is undisputed that Judges Council and Forrester omitted to inform plaintiffs of that right. The question remains whether Judges Council and Forrester were acting within their judicial capacities and therefore are shielded by judicial immunity.

 Judicial immunity has been fashioned "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray,* 386 *U.S.* 547, 554, 87 *S.Ct.* 1213, 1218, 18 *L.Ed.*2d 288, 294 (1967) (internal quotation marks omitted). "If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits." *Forrester v. White,* 484 *U.S.* 219, 226–27, 108 *S.Ct.* 538, 544, 98 *L.Ed.*2d 555, 565 (1988). Accordingly, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Stump v. Sparkman,* 435 *U.S.* 349, 356–57, 98 *S.Ct.* 1099, 1105, 55 *L.Ed.*2d 331, 339 (1978) (quoting *Bradley v. Fisher,* 80 *U.S.* (13 *Wall.*) 335, 351, 20 *L.Ed.* 646, 651 (1872)).

 "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 362, 98 *S.Ct.* at 1107, 55 *L.Ed.*2d at 342. In presiding over plaintiffs' enforcement proceedings, both defendants were acting within their jurisdiction and performing functions normally performed by judges, despite their failure to inform plaintiffs of their right to appointed counsel.

Plaintiffs do not argue that Judges Council and Forrester were not acting in their judicial capacities when they presided at plaintiffs' ability-to-pay hearings. Rather, plaintiffs claim that it is "the strong policy of New Jersey that prevailing § 1983 plaintiffs should be awarded counsel fees and costs." Contrary to plaintiffs' suggestion, New Jersey courts must interpret federal statutes, such as § 1988(b), consistent with the intent of Congress, not with plaintiffs' conception of state policy. Accordingly, Judges Council and Forrester are clothed with judicial immunity.

■ We also find that plaintiffs do not have a § 1983 cause of action against Chief Justice Poritz and Director Williams. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, *subjects, or causes to be subjected, any citizen of the United States or other person* within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities secured by the Constitution* and laws, shall be liable to the party injured....
>
> [42 *U.S.C.A.* § *1983* (emphasis added).]

Neither Chief Justice Poritz nor Director Williams "cause[d] [plaintiffs] to be subjected" to the deprivation of their right to appointed counsel. Indeed, neither committed or omitted any act—either in their judicial or administrative capacities—that can properly be found to trigger liability under § 1983.

Before the commencement of this lawsuit, no rule of court or administrative directive intimated that Superior Court judges should not appoint counsel for indigent parents at child support enforcement hearings. The complaint suggests that Chief Justice Poritz should have adopted a rule or Director Williams should have issued a directive that anticipated the constitutional issue before us and provided counsel for indigent parents at such hearings. Court rules and directives cannot anticipate every constitutional issue that may be raised outside the context of a contested case. Constitutional issues are ordinarily raised, litigated, and resolved in cases before Superior Court judges, and then are subject to appellate review. The Chief Justice and Administrative Director of the Courts cannot be held liable for not

forecasting those issues in advance of a party raising them in a contested case. On that basis, Chief Justice Poritz and Director Williams did not violate plaintiffs' constitutional right to counsel under § 1983.

Even if we were to accept plaintiffs' claim that those defendants had the obligation of foreseeing the constitutional issue and adopting an anticipatory remedy by way of a court rule or directive, we would find that the failure to do so was a legislative act shielded by legislative immunity. Article VI, Section 2, Paragraph 3 of the New Jersey Constitution invests the Supreme Court with the authority to make rules for the "practice and procedure" of the courts. Court rules serve the purpose of guiding judges and lawyers in the basic protocols and procedures that apply in our judicial system. The promulgation of a court rule is a legislative act. *See Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 *U.S.* 719, 731, 734, 100 *S.Ct.* 1967, 1974, 1976, 64 *L.Ed.*2d 641, 653, 655 (1980). Those who draft and promulgate such rules, or omit to do so, are protected by legislative immunity. *See id.* at 731–34, 100 *S.Ct.* at 1974–76, 64 *L.Ed.*2d at 653–55 (granting legislative immunity in § 1983 action to Virginia Supreme Court exercising "legislative power" in promulgating set of rules governing Virginia State Bar); *see also Abick v. Michigan*, 803 *F.*2d 874, 877–78 (6th Cir.1986) (holding that justices of Michigan Supreme Court "act[ ] in their legislative capacity" in promulgating court rules of practice and procedure). Thus, even if Chief Justice Poritz and Director Williams violated plaintiffs' right to counsel by failing to promulgate a court rule or issue an administrative directive, they would be absolutely immune from any liability.

## B.

For the first time, plaintiffs argue before this Court that they are entitled to counsel fees under the New Jersey Civil Rights Act, *N.J.S.A.* 10:6–1 and –2. That Act went into effect on September 10, 2004, the day that the Appellate Division rendered

its opinion in this case. A cause of action under *N.J.S.A.* 10:6–2 did not exist when the complaint was filed or when argument was heard before the Appellate Division. Under such circumstances, we decline to address whether plaintiffs are entitled to counsel fees under *N.J.S.A.* 10:6–2.

## IV.

For the reasons expressed, the complaint against defendants Chief Justice Poritz and Director Williams must be dismissed because they did nothing to cause plaintiffs to be subjected to a violation of their constitutional rights. Judges Council and Forrester are entitled to judicial immunity from any claim for counsel fees. We reverse the Appellate Division and enter judgment in favor of plaintiffs to the following extent.

In the future, at child support enforcement hearings, all parents charged with violating a court order must be advised of their right to counsel. Those parents facing potential incarceration must be advised of their right to appointed counsel if they are indigent and, on request and verification of indigency, must be afforded counsel. Otherwise incarceration may not be used as an option to coerce compliance with support orders. Those parents arrested on warrants for violating their support orders must be brought before a court as soon as possible, but, in any event, within seventy-two hours of their arrest.

We realize that unless there is a funding source for the provision of counsel to indigent parents in *Rule* 1:10–3 proceedings, coercive incarceration will not be an available sanction. We will not use our authority to impress lawyers into service without promise of payment to remedy the constitutional defect in our system. The benefits and burdens of our constitutional system must be borne by society as a whole. In the past, the Legislature has acted responsibly to provide funding to assure the availability of constitutionally mandated counsel to the poor. *See, e.g., N.J.S.A.* 2B:24–7 (providing for representation of indigent municipal defendants charged with crimes specified in *N.J.S.A.* 2B:12–18

or likely to be "subject to imprisonment or other consequence of magnitude"); *N.J.S.A.* 30:4C–15.4(a) (providing in termination of parental rights cases that if indigent parent "requests counsel, the court shall appoint the Office of the Public Defender to represent the parent"). We trust that the Legislature will address the current issue as well.

We refer to the Supreme Court Family Practice Committee consideration of appropriate rules and procedures for the implementation of this decision.

The judgment of the Appellate Division is reversed.

*For reversal*—Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA-SOTO—6.

*Opposed*—None.