**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3187-15T1

QUEEN LIZZY ONUKOGU,

    Plaintiff-Respondent,

v.

CHIDI M. ONUKOGU,

    Defendant-Appellant.

_____

<div style="margin-left:2em">

Submitted October 9, 2018 – Decided  October 30, 2018

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0543-14.

Chidi M. Onukogu, appellant pro se.

Respondent has not filed a brief.

</div>

PER CURIAM

    In this post-judgment matrimonial matter, defendant (ex-husband) appeals

from the Family Part's March 3, 2016 order entered following an ability to

comply hearing, ordering him to list for sale property he purchased prior to the marriage to assist in paying the arrears owed to plaintiff (ex-wife) for child support and alimony. In light of the record and applicable law, we affirm.

We glean the following facts from the record. The parties married in Nigeria in 2000. After the marriage, defendant returned to the United States where he had resided prior to the marriage and plaintiff later joined him. The parties first resided together in a two-family house on Norwood Street in Newark. The Norwood Street property was purchased by defendant prior to the marriage, was titled solely in his name, and contained an apartment that was rented to generate income. After approximately two years, the parties purchased and moved to another two-family house on 12th Avenue in Newark, which became the marital residence despite also being titled solely in defendant's name. Two children were later born of the marriage, a boy in 2004, and a girl in 2006.

The parties separated in 2012, when defendant moved out of the marital residence while plaintiff and the children remained. The parties divorced in 2014. In the dual judgment of divorce (DJOD) entered on December 16, 2014, following the parties' divorce trial, Judge Maureen B. Mantineo awarded joint legal custody of the children to the parties, but designated plaintiff the parent of

2

primary residence and ordered defendant to pay $137 per week in child support. The judge also ordered defendant to pay alimony in the amount of $375 per week for ten years, beginning December 19, 2014, and ordered the county probation department to collect the spousal and child support payments. See R. 5:7-4(b). Additionally, the judge awarded plaintiff the sum of $20,500 in equitable distribution, payable at a rate of $100 per week, beginning December 19, 2014. According to the judge, the award was intended to compensate plaintiff for ten years of marital earnings that rightfully belonged to the parties' marital estate, but defendant used to maintain the Norwood Street property, which had "equity in the amount of $107,000" based on defendant's certification.

In rendering her ruling on the equitable distribution award, Judge Mantineo acknowledged that the Norwood Street property was purchased by defendant prior to the marriage, "in his name alone." However, the judge accepted plaintiff's testimony that she had initially "resided" there and contributed to "the upkeep of the rental apartment [in the property]" by "clean[ing] it when tenants vacated," preparing it "for rental," and "financially contributing to the expenses when there were shortfalls in money." Further, the judge considered defendant's testimony that "he allowed his father and brothers

3

to live in [the Norwood Street property] rent free" while he used money acquired during the marriage "to sustain their living expenses."

The judge continued that, while defendant consistently contributed to the Norwood Street property, he "failed to keep the mortgage current on [the marital residence], and the property [was] likely to be lost."[1] The judge explained that "utilizing money that should have been part of the marital estate to support an asset titled solely in the defendant's name [gave] rise to an equitable interest by plaintiff in the property." The judge therefore concluded that although defendant was permitted to retain the Norwood Street property as "pre-marital property," plaintiff had "both sweat equity, as well as monetary equity in the asset."

After the trial, defendant traveled to Nigeria, purportedly on a disability leave of absence from his job, and did not return to the United States until approximately December 2015. Upon his return, defendant learned there was a bench warrant for his arrest for non-payment of support obligations. On

---

[1] Notably, in assessing credibility between the parties at the trial, the judge found defendant "both evasive and blatantly untruthful when it came to his finances." She explained that given the fact that defendant was "a financial specialist working for fifteen plus years in that capacity," his "inability to explain his own finances undercut the believability of his testimony," and led the judge to conclude that his own "conduct led to the dissipation of [the marital] asset[s]."

December 14, 2015, defendant surrendered himself and appeared before the court at an ability to comply hearing. At the hearing, a $10,000 purge order was issued for defendant's release from jail. At a review hearing conducted on December 18, 2015, at defense counsel's request, the court reduced the release amount to $2500, which was paid by defendant's family members, to allow defendant to attend a scheduled hearing to determine whether defendant would maintain his employment. The December 18, 2015 order also required defendant to attend another ability to comply hearing and pay an additional $1000 by December 30, 2015, or a bench warrant for defendant's arrest would be issued. On December 31, 2015, another bench warrant was issued for defendant's arrest after he failed to pay the $1000, but was recalled on January 7, 2016, when a family member made the payment.

After probation filed a motion to enforce litigant's rights on behalf of plaintiff, at an ability to comply hearing conducted on March 3, 2016, as an "alternative[] to incarceration," Judge Mantineo ordered the sale of the Norwood Street property and appointed a realtor to effectuate the sale. Initially, the judge reviewed defendant's earnings and assets to discern his ability to pay. Although defendant stated that his "net . . . W-2" earnings for the prior year were only $40,000, the judge pointed out that defendant "only worked a portion of the

year" after returning to work from his "disability" leave, but previously had "salary plus . . . rental income" from the Norwood Street property in "excess of $90,000" annually. Nonetheless, the judge noted for the record that defendant's most current weekly paycheck reflected a "net pay" of "$136," less deductions. The judge also confirmed that defendant's previously filed bankruptcy petition had been dismissed.

However, noting that defendant's child and spousal support arrears totaled $15,470.76, and that defendant had equity in the Norwood Street property, the judge explained:

> [A]s long as there[] [is] an asset here, like any other assets, I[] [a]m going to liquidate it.
>
> The only way I can liquidate that asset is to put it up for sale. Because in order for you to have an asset, and you can, and I wish you do, [plaintiff] has to be made whole. Can[not] be the other way around. . . . And again, the kids do[] [not] live in that asset. I do[] [not] have any of those competing things.
>
> So, there is an asset . . . , and I recognize things have changed somewhat.
>
> . . . [B]ut there was equity in the house that I found was there. And the asset equity should be utilized to bring the deficiency of $15,470 current.
>
> I do[] [not] have any good faith basis to believe that this will be done voluntarily.

. . . .

> The only way that I can see that . . . [plaintiff] can
> . . . be made whole with respect to income sources is by
> the asset being pledged and being sold. And, that
> whatever her ability to get the money she[] [will] get
> her[] share, and then he[] [will] be able to get his share.
> And then the significant arrears [will not] be hanging
> over him nor will the equitable distribution of $20,000.

When presented by counsel with alternative proposals to selling the Norwood Street property,[2] including a lump-sum payment to be made by defendant's relatives who had been residing in the property "rent free," the judge agreed that if defendant "[came] up with $15,000[,] the house [did not] have to be sold." However, the judge cautioned that "this can[] [not] be on [defendant's] calendar anymore." According to the judge,

> my idea of a plan is that [plaintiff] does[] [not] have to
> wait every month when is the shoe dropping. She[]
> [has] lived without water, electricity. The kids have
> lived without . . . having tuition paid. And now . . . we
> all agree she[] [is] getting kicked out . . . .

---

[2] The judge rejected the proposal that defendant "deed[] half of the [property]" to plaintiff, reasoning that plaintiff "need[ed] cash." Although the judge acknowledged that she did not know if selling the Norwood Street property was "going to give her cash either," the judge directed the attorneys to work with the appointed realtor because "Newark [was] getting hot again."

Thus, the judge allowed defendant to make a lump sum payment of $15,000 in two days to avoid selling the Norwood Street property. Otherwise, the judge ordered defendant to contact the designated realtor by March 5, 2016, to list the property for sale in order "to provide some stability for [the] children."[3] Although the judge expressed regret for the ejection of defendant's relatives who "lived there for years" without paying "any rent at the expense of [plaintiff,]" the judge noted that it was "[defendant's] choice" that put them in that position. On March 15, 2016, defendant filed a notice of appeal and this appeal followed.[4]

---

[3] In his unopposed merits brief, defendant contends that he made several arguments against the sale, including that the sale would render him and his children homeless. However, the transcript of the March 3, 2016 hearing is a compressed transcript containing only excerpts of the full hearing and does not include those purported arguments.

[4] We note that after the March 3, 2016 order was entered, defendant engaged in extensive motion practice to decrease his child support and alimony obligations, to change custody and visitation arrangements, to request Judge Mantineo's recusal, and for reconsideration of the March 3, 2016 order. Defendant also filed an order to show cause to stay the March 3, 2016 order to sell the Norwood Street property, which was denied. While the other motions were still pending, on May 6, 2016, the judge correctly determined that pursuant to Rule 2:9-1(a), the filing of an appeal relieved the trial court of authority or jurisdiction to act with the exception of the trial court's "continuing jurisdiction to enforce judgments and orders pursuant to [Rule] 1:10 and as otherwise provided." As defendant did not appeal the DJOD and the March 3, 2016 order is the only order designated in his notice of appeal, it is the only order "subject to the appeal process and [our] review." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458 (App. Div. 2008).

A-3187-15T1

On appeal, defendant argues the judge abused her discretion by ordering the sale of the Norwood Street property "without exhausting other available options." Defendant argues further that the judge "erroneously decided that [he] deliberately allowed [the marital residence] to fall into foreclosure, and therefore sought to punish [him]." We disagree.

The scope of our review of the Family Part's orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact based on adequate, substantial, and credible evidence in the record, understanding the court's special expertise in family matters. Id. at 411-13; MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007). Although no special deference is accorded to the judge's legal conclusions, Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378 (1995),

> we "should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice[,]" or when we determine the court has palpably abused its discretion.
>
> [Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (first alteration in original) (quoting Cesare, 154 N.J. at 412).]

Applying these principles, we discern no abuse of discretion and have no cause to disturb the judge's decision at the March 3, 2016 ability to comply hearing. "The issue to be decided at an ability to comply hearing closely parallels determinations Family Part judges make on a daily basis concerning the evaluation of financial information provided through documents and testimony," in an "attempt[] to achieve a fair resolution of the economic issues of parties going through the emotionally charged process of divorce." Schochet v. Schochet, 435 N.J. Super. 542, 550-51 (App. Div. 2014). "[J]udges review testimony, case information statements and other financial information, and necessarily make assessments of the parties' needs, wants, and ability to fund costs." Id. at 551. "In particular, Family Part judges are well versed in reviewing the good faith of litigants who fail to meet their obligations in the full spectrum of post-judgment litigation." Ibid.

We have previously stated

> [t]he Rule 1:10-3 hearing is not a plenary hearing to decide the appropriate amount of support an obligor should pay. That amount has been determined, either by the court following a trial or post-judgment motion, or by the parties themselves. The hearing is also not a substitute for an appeal or a motion to modify the obligation based on changed circumstances. The hearing comes about because an obligor has failed to comply with an order. The objective of the hearing is

simply to determine whether that failure was excusable or willful, i.e., the obligor was able to pay and did not.

[Id. at 548 (emphasis omitted).]

Once the court determines that "the parent was capable of providing the required support, but willfully refused to do so," Pasqua v. Council, 186 N.J. 127, 141 n.2 (2006), the court may "coerce the defendant into compliance with the court's order for the benefit of the private litigant." Id. at 140 (quoting Essex Cty. Welfare Bd. v. Perkins, 133 N.J. Super. 189, 195 (App. Div. 1975)). Pursuant to Rule 1:10-3, in addition to the ultimate sanction of incarceration, "the court may also grant additional remedies as provided by [Rule 5:3-7(b),]" including "fixing the amount of arrearages and entering a judgment upon which interest accrues;" "requiring payment of arrearages on a periodic basis;" "economic sanctions;" and "any other appropriate equitable remedy." R. 5:3-7(b).

"Relief under [Rule] 1:10-3, whether it be the imposition of incarceration or a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997). For example, in Milne v. Goldenberg, 428 N.J. Super. 184, 198-99 (App. Div. 2012), the former wife appealed an order imposing community service hours upon her as a means of coercing her to

comply with past orders regarding the payment of a joint federal income tax liability. The trial court observed that the former wife "had 'a significant amount of money . . . [at] her disposal, while she was not complying with these court orders'" and had "intentionally 'prioritize[d]' her funds and ignored the obligation." Id. at 199 (alterations in original). Accordingly, the trial court found her "non-compliance was deliberately designed to delay satisfaction of the obligation," and concluded "[her] failure to pay was willful." Ibid. We affirmed that aspect of the trial court's order. Id. at 209.

Here, deferring to Judge Mantineo's factual findings regarding plaintiff's ability to pay and his willful non-compliance, which are facts supported by the evidence in the record, we conclude the judge's order to sell the Norwood Street property, rather than incarceration, was a reasonable exercise of judicial discretion. Accordingly, we will not disturb the order.

Defendant also seeks recusal of the judge, arguing that Judge Mantineo exhibited "prejudice against [him] and bias towards [plaintiff]." Rule 1:12-2 provides that "[a]ny party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." The motion must be made to the judge whose disqualification is sought. State v. McCabe, 201 N.J. 34, 45 (2010). Here, defendant did not seek Judge Mantineo's

recusal in the proceeding underlying the order that is the subject of this appeal. We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  Because this issue is neither jurisdictional in nature nor does it substantially implicate the public interest, we decline to consider it.  We note only that from our review of the record, Judge Mantineo's enforcement of the support orders was based on the evidence in the record, not a bias against defendant.  "Bias cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3187-15T1