787 A.2d 923

NEW JERSEY DIVISION OF YOUTH AND FAMILY
SERVICES, PLAINTIFF–RESPONDENT, v. J.C.
DEFENDANT–APPELLANT.

IN THE MATTER OF THE GUARDIANSHIP OF S.L.M., A MINOR.

Superior Court of New Jersey
Appellate Division

Submitted December 5, 2001—Decided January 3, 2002.

Before Judges BAIME, FALL and AXELRAD.

*Peter A. Garcia,* Acting Public Defender, attorney for appellant J.C. (*Philip Lago,* Designated Counsel, of counsel and on the brief).

*John J. Farmer,* Attorney General, attorney for respondent Division of Youth and Family Services (*Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Abigail A. Daly,* Deputy Attorney General, on the brief).

*Peter A. Garcia,* Acting Public Defender, attorney for respondent S.L.M. (*Joyce L. Maraziti,* Assistant Deputy Public Defender, Designated Counsel & Law Guardian, on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

This appeal requires us to construe *N.J.S.A.* 30:4C–15(f), which directs DYFS to file a petition for guardianship whenever

the *parent* of a child has been found by a criminal court of competent jurisdiction to have committed ... or attempted to commit, an assault that resulted, or could have resulted, in the significant bodily injury *to the child or another child of the parent* . . . .

[Emphasis added.]

At issue is whether summary judgment is a proper vehicle for the termination of parental rights. We also consider whether the word "parent" in the above statute encompasses anyone who is in an *in loco parentis* status to the child, as broadly defined in the abuse and neglect statute, *N.J.S.A.* 9:6–8.21, or whether its scope is limited to a biological or adoptive parent.

We are of the view that summary disposition is generally an inappropriate remedy in a termination of parental rights case. We also hold that the word "parent" in *N.J.S.A.* 30:4C–15(f) is to be construed literally to mean a biological or adoptive parent who is convicted of a serious offense against any of his or her children.

In this guardianship action, J.C., the natural father of a daughter, S.L.M., born on September 14, 1999, appeals from the entry of

summary judgment in favor of plaintiff, New Jersey Division of Youth and Family Services (DYFS), terminating his parental rights as to S.L.M. and committing her to the "guardianship, care, custody and control" of DYFS for all purposes, including placement for adoption. We reverse and remand for a plenary hearing as to the *N.J.S.A.* 30:4C–15.1 "best interests" criteria.

The basis for DYFS' motion for summary judgment relates to J.C.'s abuse and neglect of S.L.M.'s half-sister C.M., born on November 13, 1996. J.M. is the mother of both C.M. and S.L.M. D.S. is the father of C.M. and J.C. is the father of S.L.M. J.C. pled guilty to second-degree aggravated assault of C.M. occurring on August 30, 1998. The incident occurred while J.M. had allowed J.C., her co-habitant paramour, to care for the child. While high on drugs, J.C. placed C.M. in a scalding hot shower, resulting in second and third degree burns over half her body. On March 31, 2000, he was sentenced to a five-year term of imprisonment, with an 85% parole disqualifier pursuant to the No Early Release Act.

DYFS filed a Title 9 child abuse and neglect complaint against J.M. and D.S. with respect to the care and custody of C.M. On February 10, 1999, C.M. was removed from the home and placed in the home of her maternal grandparents where she still resides.

J.M. continued to reside with J.C. after the incident with C.M., became pregnant, and S.L.M. was born on September 14, 1999. DYFS filed an amended Title 9 complaint, adding J.C. as a defendant as to S.L.M. On November 19, 1999, an order was entered placing S.L.M. in DYFS' care and custody, who later placed her with her maternal aunt and uncle. On December 1, 1999, a dispositional order was entered in the abuse and neglect action incorporating the domestic violence restraining order precluding J.C. from having any contact with either C.M. or S.L.M.

After a hearing on June 7, 2000, a further dispositional order was entered in which the natural mother, J.M., surrendered her parental rights to C.M. and S.L.M., to allow the children to be adopted by their maternal grandmother and maternal aunt, respectively. Based on J.C.'s conviction of aggravated assault

against C.M., the court made a finding of "abuse and neglect" as to both children under *N.J.S.A.* 9:6–8.21, and relieved DYFS of expending any reasonable efforts to reunify J.C. with S.L.M.

On August 15, 2000, DYFS filed a guardianship complaint in which it sought to terminate J.C.'s parental rights as to S.L.M. pursuant to *N.J.S.A.* 30:4C–15, which provides, in pertinent part:

Whenever (a) it appears that a court wherein a complaint has been proffered as provided in chapter 6 of Title 9 of the Revised Statutes, has entered a conviction against the parent or parents, guardian, or person having custody and control of any child because of abuse, abandonment, neglect of or cruelty to such child; or ... (c) it appears that the best interests of any child under the care or custody of the Division of Youth and Family Services require that he be placed under guardianship; or ... (f) the *parent of a child has been found by a criminal court* of competent jurisdiction to have committed murder, aggravated manslaughter or manslaughter of another child of the parent; to have aided or abetted, attempted, conspired, or solicited to commit such murder, aggravated manslaughter or manslaughter of the child or another child of the parent; or *to have committed, or attempted to commit, an assault that resulted, or could have resulted, in the significant bodily injury to the child or another child of the parent;* or the parent has committed a similarly serious act which resulted, or could have resulted, in the death or significant bodily injury to the child or another child of the parent; a petition to terminate the parental rights of the child's parents, setting forth the facts in the case, shall be filed by the division with the Family Part of the Chancery Division of the Superior Court in the county where such child may be at the time of the filing of such petition.

[Emphasis added.]

Thereafter, DYFS moved for the entry of summary judgment against J.C. In an opposing certification, S.L.M.'s paternal grandmother sought physical custody of S.L.M., asserting that she had been prevented from seeing S.L.M. after the child began living with her maternal aunt and uncle. J.C. also filed a certification indicating that he was incarcerated and that while he was in prison he took steps to turn his life around: he actively participated in a drug rehabilitation program and all other programs the prison offers for drug rehabilitation, tested negative during random drug screens, applied for the eighteen-month drug rehabilitation program offered at Yardville, and has a promise of employment upon release from prison. He indicated that the situation with C.M. was a "freakish one-time event" and that upon his release from prison he wanted to have a role in S.L.M.'s upbringing. He also

wanted his mother, father, and sister to be involved in S.L.M.'s life.

On May 10 and 17, 2001, the Family Part judge heard oral argument from the Deputy Attorney General on behalf of DYFS, the Law Guardian, and the attorney for J.C. Counsel for J.M. was also present, but did not argue. In granting DYFS' motion for summary judgment terminating J.C.'s parental rights, the court held that *N.J.S.A.* 30:4C–15 was applicable. The judge had this to say, in relevant part:

> And I am satisfied that there is no genuine issue of material fact that would preclude summary judgment relief. And my approach to the ultimate determination requires me to look at *N.J.S.A.* 30:4C–15, *N.J.S.A.* 30:4C–15.1, 15.1 being the best interest of the child determination, as well as various sections of Title 9.
>
> . . . .
>
> The Division, as part of its legal position, has referred the Court to *N.J.S.A.* 30:4C–15. Counsel and the Court agree that that statute is not a model of clarity. It is not a model of grammatical consistency.
>
> But with those comments made, I am satisfied that the statute is interpretable and is interpretable without a great deal more than the plain language of the statute. And perhaps some judicial interpretation of words of art [is] necessary.
>
> . . . .
>
> The question that evolved when we were listening to oral argument is the concept of parent. And because I am satisfied that Title 9, as applied in Title 30 as applied, had to be considered in para materia. I would simply point to the definition in 9:6–8.21, sub paragraph (a), that talks about parent or guardian.
>
> And it says it means any natural parent, . . . or any person who has assumed responsibility for the care, custody or control of a child or upon whom there is a legal duty for such care.
>
> . . . .
>
> I am satisfied that when the Legislature used the word parent in 30:4C–15, its import or its intent was to use parent in its broadest sense.
>
> . . . .
>
> Here, when you take a look at the setting that existed between . . . [J.C.] and C.M. as of the day of the injuries that were sustained by C.M. [t]here is no doubt that I have that on that day and for days prior to that day, the status of . . . [J.C.] to C.M. put him into an in loco parentis status as to that child.
>
> . . . .
>
> So to the extent that the Division asks that the Court determine that sections of *N.J.S.A.* 30:4C–15 apply here, I am satisfied that they do apply here. The A section applies.
>
> . . . .

I am also satisfied that Section (f) of 30:4C–15 is applicable. Section (f), the parent of a child who has been found by a criminal court of competent jurisdiction to have committed or attempted to commit an assault that resulted or could have resulted in the significant bodily injury to the child or another child of the parent.

And as I've said, my view of the breadth of parent I've already addressed. The plea to that second count meets this language. It also meets the language that followed. Or the parent has committed a similarly serious act which resulted or could have resulted in the death or significant bodily injury to the child or another child of the parent.

. . . .

And I am satisfied that the language plainly read applies to both children. And applying the clear and convincing standard, I'm satisfied that the parental right that . . . [J.C.] has to . . . [S.L.M.] is terminable because the clear and convincing burden has been established.

The judge went on to find in a perfunctory manner that the statutory "best interests" criteria set forth in *N.J.S.A.* 30:4C–15.1 were also satisfied.

On appeal, J.C. essentially asserts that the trial judge erred in terminating his parental rights by way of summary judgment and erred in concluding that "parent" in *N.J.S.A.* 30:4C–15(f) derives its meaning from "parent or guardian" as defined in *N.J.S.A.* 9:6–8.21. We agree and reverse and remand this matter for a plenary hearing as to the *N.J.S.A.* 30:4C–15.1 "best interests" criteria.

 The use of the summary judgment procedure in termination of parental rights cases is rarely appropriate. We recognize that the procedure was used in *In re Guardianship of J.O.,* 327 *N.J.Super.* 304, 743 *A.*2d 341 (App.Div.), *certif. denied,* 165 *N.J.* 492, 758 *A.*2d 651 (2000), where we affirmed the trial judge's grant of DYFS' motion for summary judgment terminating the parental rights of a father to his seven youngest children. That case represents the exception rather than the rule. *In re Guardianship of J.O.* involved an extremely brutal situation where the record revealed that "there is almost no humanity left in the relationship of the parent to the child." *Id.* at 308, 743 *A.*2d 341 (quoting *New Jersey Div. of Youth & Family Serv's v. A.W.,* 103 *N.J.* 591, 602, 512 *A.*2d 438 (1986)). Extensive evidence had been presented at the father's criminal trial indicating that he and his friends committed repeated, horrendous acts of sexual abuse on

his children over a prolonged period of time, leading to his conviction of 239 counts of rape, deviate sexual offenses, and other related crimes. *Ibid.* DYFS, in its efforts to " 'move expeditiously to save the child[ren],' " filed a motion for summary judgment. *Id.* at 308–309, 743 *A.*2d 341 (quoting *A.W., supra,* 103 *N.J.* at 602, 512 *A.*2d 438). Although J.O.'s counsel filed opposing documentary submissions, including a statement in which the father denied having sexually assaulted his children, there was no objection to the use of the summary judgment procedure. *Id.* at 309, 743 *A.*2d 341. The facts of the instant case are entirely different and do not warrant the use of the summary judgment vehicle.

 The judge also erred in concluding that the word "parent" in the guardianship and termination statute, *N.J.S.A.* 30:4C 15(f), derived its meaning from the broad definition of "parent or guardian" in the abuse and neglect statute, *N.J.S.A.* 9:6–8.21, and encompassed "anyone who is in an loco parentis status to the child." Unlike Title 9, sub-section "f" expressly refers only to a "parent" who is convicted of a serious offense against the child or another child of the parent. J.C. was not the biological or adoptive parent of C.M., the child who was abused.

Beyond this, *N.J.S.A.* 30:4C–15 merely instructs DYFS as to the circumstances under which it is appropriate to file a petition for guardianship and termination of parental rights. The statute was not designed to dispense with the four-prong "best interests of the child" test of *N.J.S.A.* 30:4C–15.1. *See In re Guardianship of K.H.O.,* 161 *N.J.* 337, 347, 736 *A.*2d 1246 (1999); *N.J.S.A.* 30:4C–20. Although the trial judge made cursory findings that all four prongs were met by clear and convincing evidence, it is apparent that his decision was colored, to a large extent, by his misapplication of *N.J.S.A.* 30:4C–15(f) to the facts of this case and his reliance on *In re Guardianship of J.O., supra,* as constituting precedent for the use of the summary judgment vehicle in a case of this kind. These errors necessitate reversal of the trial judge's grant of DYFS' motion for summary judgment. That is not to say that the trial judge is precluded from terminating J.C.'s parental

rights after a plenary hearing as to the *N.J.S.A.* 30:4C–15.1 "best interests" criteria, but only that due process dictates such a plenary proceeding.

We recognize that "[f]ew forms of state action are both so severe and so irreversible" as the severance of the parent-child relationship. *Santosky v. Kramer,* 455 *U.S.* 745, 759, 102 *S.Ct.* 1388, 1398, 71 *L.Ed.*2d 599, 610 (1982); *A.W., supra,* 103 *N.J.* at 600, 512 *A.*2d 438. As Judge Eichen articulately stated in *New Jersey Division of Youth & Family Services v. T.J.B.,* 338 *N.J.Super.* 425, 435, 769 *A.*2d 1071 (App.Div.2001), "[o]nly through an evidentiary hearing can the court and the parties be assured that DYFS has met its heavy burden to prove by clear and convincing evidence a termination of a parent's right to his or her child is in the child's best interests." It is clear that DYFS' *"parens patriae* role and the judiciary's responsibilities in discharging that function, requires no less." *New Jersey Div. of Youth & Family Serv's v. L.H.,* 340 *N.J.Super.* 617, 620, 775 *A.*2d 125 (App.Div. 2001).

Reversed and remanded for a plenary hearing as to the *N.J.S.A.* 30:4C–15.1 "best interests" criteria to occur within ninety days of this opinion. We do not retain jurisdiction.