RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0780-15T4
 A-0067-16T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

J.S.,

 Defendant,

and

R.W.,

 Defendant-Appellant.
__________________________________

IN THE MATTER OF M.W.,

 Minor.
__________________________________

 Argued September 25, 2017 – Decided October 16, 2017

 Before Judges Sabatino, Whipple, and Rose.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Cape May
 County, Docket Nos. FN-05-0035-15 and FG-05-
 0003-16.
 Clara S. Licata, Designated Counsel, argued
 the cause for appellant (Joseph E. Krakora,
 Public Defender, attorney; Ms. Licata, on the
 briefs).

 Jennifer Russo-Belles, Deputy Attorney
 General argued the cause for respondent
 (Christopher S. Porrino, Attorney General,
 attorney; Melissa H. Raksa, Assistant Attorney
 General, of counsel; Ms. Russo-Belles, on the
 brief).

 Melissa R. Vance, Assistant Deputy Public
 Defender argued the cause for minor (Joseph
 E. Krakora, Public Defender, Law Guardian,
 attorney; Ms. Vance, of counsel and on the
 brief).

PER CURIAM

 In these consolidated appeals, defendant R.W. (Robert1)

appeals from a July 15, 2015 permanency order terminating him from

an FN litigation.2 Robert also appeals from a June 28, 2016 order

denying his motion to vacate a separate order terminating

1
 All names used herein are pseudonyms for ease of reference, and
to protect the confidentiality of the parties and their child.
2
 There are eleven separate and distinct docket types in the
Family Part, each pertaining to a different aspect of family life
that requires action. The FN docket contains cases where the
Division of Child Protection and Permanency (the Division) has
filed a complaint to assume care, custody, or supervision of a
child to protect him or her from harm. The FG docket involves
cases where the Division has filed a complaint to terminate
parental rights and assume guardianship. The FD, or non-
dissolution docket, involves cases concerning non-divorce family
relationships where custody, visitation, parenting, child support,
and paternity are addressed.

 2 A-0780-15T4
litigation under the FG docket, and to intervene in the same FG

litigation. For the reasons that follow, we affirm.

 Our review of the record reveals the following relevant

history. Robert and J.S. (Jenny) were involved in a long-term and

sometimes tumultuous relationship, which involved periods of

estrangement, an engagement, drug and alcohol abuse, and incidents

of domestic violence. M.W. (Maggie) was born in March 2013, and

although both Jenny and Robert expressed doubts about whether

Robert was Maggie's biological father, he was listed on her birth

certificate. Thereafter, he accepted the role of father and the

three functioned as a family unit until she was removed from their

care and placed into Division custody.

 On July 25, 2014, the Division received a referral regarding

a July 16, 2014 incident where Maggie had been present while Jenny

and Robert were partying with neighbors, and drugs and alcohol

were being used. At some point during the evening, Jenny and

Robert became involved in a physical and verbal altercation. From

approximately 10:45 p.m. to 1:35 a.m., Robert locked himself in

their apartment with Maggie, not allowing police to enter. He was

eventually persuaded to leave the apartment and release Maggie,

and was arrested and charged with child endangerment, kidnapping,

simple assault, terroristic threats, and assault on a police

officer.

 3 A-0780-15T4
 On July 24, 2014, Jenny secured a restraining order against

Robert, which prohibited contact with her and Maggie and ordered

inpatient counseling. On August 21, 2014, the restraining order

was amended to allow Robert supervised visits with Maggie.

 On September 18, 2014, the Division received a report that

stated Robert was arrested for violating the restraining order by

having unsupervised contact with both Maggie and Jenny. The

Division later learned Jenny had ceased taking her medication and

had a breakdown. The police transported her to the hospital, and

she was kept overnight and released.

 On September 24, 2014, the Division executed an emergency

removal, and Maggie was placed with her maternal grandmother. On

September 26, 2014, the Division filed a verified complaint for

custody under the FN docket. At the hearing, the Family Part

judge determined removal was necessary because of the ongoing

substance abuse and domestic violence allegations involving Jenny

and Robert.

 During a hearing on October 8, 2014, the court ordered, among

other things, Robert to undergo paternity testing. On January 7,

2015, Robert and Jenny stipulated to being a family in need of

services under N.J.S.A. 30:4C-12. At that time, Robert was still

facing criminal charges from the July 16, 2014 incident, and Jenny

intermittently resided in substance abuse treatment centers,

 4 A-0780-15T4
domestic violence shelters, and with other family members. The

court continued Division custody of Maggie, granted supervised

visitation rights for both Jenny and Robert, imposed random drug

testing, substance abuse treatment, and domestic violence

counseling for both Jenny and Robert, and required psychiatric

evaluations for Jenny.

 From October 2014 through April 2015, Robert attended weekly

one-hour-long visitations with Maggie but in May 2015 was

incarcerated for the child endangerment charges.3 Jenny and Robert

had separate visitation schedules with Maggie. The Division

reported Robert's visits were generally positive.

 On July 15, 2015, the parties attended a permanency hearing.

The Division reported the paternity test ruled out Robert as

Maggie's biological father. The Division, without objection from

Jenny and the Law Guardian, moved for Robert to be dismissed from

the FN litigation based on the results of the paternity test.

Robert objected, arguing for a bonding evaluation. The court

declined to dismiss Robert as a party at that time but denied

Robert a bonding evaluation, declined to order visitation, and

accepted the Division's plan for termination of Jenny's parental

rights followed by relative adoption concurrent to reunification

3
 The other criminal charges were apparently dismissed.

 5 A-0780-15T4
with Jenny. The judge offered to consider any legal arguments

submitted by the parties pertaining to whether Robert should remain

in the litigation as a parent. Despite the judge's invitation,

there is no indication in the record that any party submitted

legal memoranda concerning Robert's legal status as a parent.

 On August 26, 2015, the Division renewed its request that

Robert should be dismissed from the litigation. Robert argued the

FN litigation should not be dismissed, and if it were, he asked

that he be named in the guardianship proceeding under the FG

docket. Further, he asserted he was entitled to weekly visits

with Maggie following his release from incarceration, and he sought

a stay on any interruptions to his visitation rights.

 The judge acknowledged the Division guardianship complaint,

in the FG docket, would exclude Robert, thus it effectively

dismissed him from the litigation, stating Robert had "always held

himself out to be [Maggie's] father, and . . . acted as her father"

but "there has been domestic violence between him and [Jenny]."

The judge then stated, "[Robert's] devotion to the child has been

a constant throughout the case" but, under Title 9,

 there's a broad definition, and maybe not of
 parent, but who gets to stay in the case and
 who’s out of the case . . . [but in] a
 termination of parental rights case, it's a
 very narrow definition, and specifically,
 . . . New Jersey Division of Youth and Family

 6 A-0780-15T4
 Services v. J.C.,[4] and the Appellate Division
 has indicated that the definition of a parent
 is construed narrowly, to mean only a
 biological or adoptive parent, and does not
 include an individual who has been in the
 position of a parent.

 The court terminated the FN litigation, Robert's court

appointed lawyer was relieved, and the court reconvened almost

immediately under the FG docket. Thereafter, the Office of

Parental Representation appointed new counsel for Robert and

prepared a motion for leave to intervene in the guardianship

proceeding.

 On October 9, 2015, Robert filed an appeal of the permanency

order and the order terminating the FN litigation. On April 5,

2016, we stayed the appeal to allow Robert to move to intervene

at the trial level in the FG proceeding. However, earlier, on

November 18, 2015, the Family Part had entered a Guardianship

Multipurpose Order acknowledging V.R. (Vincent) as Maggie's

biological father.

 On February 5, 2016, Robert underwent an evaluation with Dr.

Jesse Whitehead, Jr., Psy.D.5 Dr. Whitehead assessed Robert's

parenting and caretaking capabilities, and whether he met the

criteria necessary to qualify as a psychological parent. At this

4
 346 N.J. Super. 277 (App. Div. 2002).
5
 Neither Maggie nor Jenny participated in the evaluation.

 7 A-0780-15T4
evaluation, Robert gave a detailed description of his

relationships with Jenny and Maggie. He was present at her birth,

tended to her when she was sick, she called him "Da," and he has

been the only father present from her birth until her removal from

Jenny. Dr. Whitehead opined Robert was physically,

psychologically, and financially capable of parenting, and that

he had satisfied the criteria of being a psychological parent.

 On March 23, 2016, Vincent appeared at an FG case management

hearing. The Division represented it had no child protection

concerns about Vincent and that Vincent was amenable to a joint

custody arrangement, with the maternal grandmother currently

caring for Maggie, in order not to disrupt her life. The Division

no longer wished to pursue guardianship. On April 6, 2016, the

guardianship litigation was terminated, and custody of Maggie was

transferred to her maternal grandmother jointly with Vincent, with

the filing of an order under the non-dissolution FD docket. Robert

had not yet moved to intervene.

 On April 25, 2016, Robert moved to vacate the dismissal of

the guardianship litigation so that he would be able to intervene

there. On June 28, 2016, the court heard argument and denied the

motion, concluding "the application is moot because there's no FG

litigation pending and Robert had an adequate avenue to seek his

remedy in the FD docket."

 8 A-0780-15T4
 On August 18, 2016, the court issued an order denying the

motion for the reasons placed on the record on June 28, 2016, from

which Robert appealed. We granted his subsequent motion to

consolidate the two appeals.

 In our review, we note our usual deference to the special

expertise of the family court, New Jersey Division of Youth and

Family Services v. E.P., 196 N.J. 88, 104 (2008), is inapplicable

because the issues before us involve "[a] trial court's

interpretation of the law and the legal consequences that flow

from established facts[.]" Manalapan Realty, L.P. v. Twp. Comm.

of Manalapan, 140 N.J. 366, 378 (1995). We owe no deference to a

trial court when it makes such determinations. Ibid.

 Robert argues he was Maggie's legal father, and therefore it

was an error for the trial court to dismiss him from the litigation

without an order establishing parentage. He argues he meets the

definition of a presumptively biological parent under Rule 9:17-

43(a)(4)-(5), because he acted as Maggie's father, held her out

as his daughter, and was on her birth certificate. He further

argues these presumptions can only be rebutted in a parentage

action by clear and convincing evidence with a court order

terminating his paternal rights or establishing those of another

man. We agree Robert may assert those arguments but he may not

 9 A-0780-15T4
pursue such a remedy under either the FN or FG dockets in the

discrete context of this matter.

 It is important to note Robert acknowledges Vincent is the

biological father, and is not seeking custody. Instead, Robert

asserts he is the psychological parent of Maggie, and requests the

right to continue to visit and remain part of her life. It is for

this reason that the proper forum to address his request is not

to re-open either Division litigation, but for Robert to seek

intervention in the FD docket if he chooses to do so.

 The purpose of the FN docket is to ensure the protection of

the child, and "[i]n any case in which family reunification is not

the permanency plan for the child, reasonable efforts shall be

made to place the child in a timely manner and to complete the

steps necessary to finalize the permanent placement of the child."

N.J.S.A. 9:6-8.8. As reunification and parental custody is not

Robert's goal, the FN docket holds no remedy for him because it

does not adjudicate matters of custody between parents when the

Division no longer has concerns about the child's safety. In the

same vein, the FG docket also holds no remedy for him as it

involves the termination of parental rights for the limited purpose

of freeing a child for the goal of adoption.

 Even if reunification and parental custody were Robert's

goal, he bears the high burden of demonstrating he should be

 10 A-0780-15T4
awarded custody over a fit parent. In Faucett v. Vasquez, 411

N.J. Super. 108, 119 (App. Div. 2009), we said, "a legal parent

has a fundamental right to the care, custody and nurturance of his

or her child." V.C. v. M.J.B., 163 N.J. 200, 218, cert. denied,

531 U.S. 926, 121 S. Ct. 302, 148 L. Ed. 2d 243 (2000). N.J.S.A.

9:2-4 specifically provides that "[i]n any proceeding involving

the custody of a minor child, the rights of both parents shall be

equal[.]"

 Thus, "when the dispute is between a fit parent and a third

party, only the fit parent is presumed to be entitled to custody,"

and "only a showing of unfitness, abandonment, gross misconduct,

or exceptional circumstances will overcome this presumption."

Faucett, supra, 411 N.J. Super. at 119-20 (citations omitted).

Consequently, "the best interest of the child cannot validly ground

an award of custody to a third party over the objection of a fit

parent" without rebutting this presumption through "an initial

court finding that the standard for termination of the rights of

a non-consenting parent" or a "finding of exceptional

circumstances[,] such as the third party ha[ving] become a

psychological parent to the child." Id. at 120 (quoting Watkins,

163 N.J. 235, 255 (2000)).

 Furthermore, even if Robert were to prevail in establishing

status as a psychological parent and create a finding of those

 11 A-0780-15T4
exceptional circumstances, neither an FN order nor an FG order

would provide him prospective enforceable relief because of the

confidential and limited nature of such orders.

 Here, the biological parents, at least one of whom was fit,

consented to leave custody of Maggie with her grandmother under

an arrangement in the FD docket. Roberts's assertion of the right

to continue a relationship with Maggie is no longer a dispute with

the Division, and as the Family Part judge correctly noted, may

only be addressed with those parties through intervention in the

FD docket.

 Robert also argues he had ineffective representation because

his lawyer did not make a formal motion to the Family Part to

engage an expert to document Robert's status as a psychological

parent, did not submit a legal memorandum discussing Robert's

legal status as a parent and his standing to participate in the

FG litigation, and did not ask Robert for evidence of the bond

between him and Maggie. We do not address whether the actions of

Robert's trial counsel were deficient because Robert has not

established that but for his counsel's insufficient performance,

the outcome would have been different. The New Jersey Supreme

Court in New Jersey Division of Youth & Family Services v. B.R.,

192 N.J. 301, 306 (2007), held a parent's right to counsel is

grounded in both the constitution and the statutory framework for

 12 A-0780-15T4
termination cases and that counsel must be effective. Therefore,

in termination cases, to determine whether counsel was

ineffective, the test developed in Strickland v. Washington, 466

U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted

by the Court in State v. Fritz, 105 N.J. 42, 58 (1987), is applied.

B.R., supra, 192 N.J. at 307. Even if Robert's lawyer had

submitted timely legal arguments in the FG docket in support of

his status as a legal or psychological parent, the result would

not have been different but for his trial counsel's performance.

Because the FG litigation was dismissed against all parties, it

is moot, and Robert is not without recourse but instead is able

to pursue relief under the FD docket.

 Robert argues he will be prejudiced by being forced to file

under the FD docket because he will lose the benefit of Public

Defender counsel and funding. It is true that "temporary loss or

permanent termination of an indigent parent's rights to his or her

child in a judicial proceeding is a consequence of magnitude

requiring the assignment of counsel." Pasqua v. Council, 186 N.J.

127, 148 (2006) (citing Crist v. N.J. Div. of Youth & Family

Servs., 135 N.J. Super. 573, 575 (App. Div. 1975)). However, this

constitutional guarantee is necessary due to the drastic and

permanent nature of the loss in a parental termination proceeding.

B.R., supra, 192 N.J. at 301. Here, the loss to Robert is not of

 13 A-0780-15T4
the same nature, and the situation here is not of the same

magnitude. He does not seek custody of Maggie, but rather

visitation rights, and neither he nor the other parties are

entitled to state-funded counsel for that narrow litigative

purpose. In such an application, Robert is free to tender Dr.

Whitehead's report, and any opposing parties are free to argue it

is inadmissible or inconsequential, or to present evidence from a

different expert.

 Any additional arguments introduced by Robert are without

sufficient merit to warrant discussion in a written opinion. R.

2:11-3(e)(1)(E).

 Affirmed.

 14 A-0780-15T4