**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3629-19

RUTH BARBUT,

     Plaintiff-Respondent,

v.

YOSEF BARBUT,

     Defendant-Appellant.

_____

Submitted October 25, 2021 – Decided November 16, 2021

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1172-17.

Yosef Barbut, appellant pro se.

Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial action, defendant challenges six Law

Division orders dated December 12, 2019, May 13, 2020, May 18, 2020, May

22, 2020, and two dated October 6, 2020. We have considered defendant's arguments in light of the record and applicable law and affirm all of the orders under review.

I.

As a preliminary matter, we note that the facts recited below are, in large part, gleaned from the court's statements of reasons appended to the aforementioned orders, as defendant failed to provide all relevant certifications and transcripts from the trial court proceedings.

The parties were married in 2000 and have three children. Plaintiff filed for divorce in April 2017. She certified that defendant was "the primary wage earner" throughout the marriage and "controlled almost all of [their] finances."

While the parties' divorce was pending, plaintiff obtained a temporary restraining order against defendant. Plaintiff's underlying complaint described a verbal altercation that began when defendant refused to contribute to plaintiff's legal fees. Three weeks later, the parties entered a consent order in which defendant vacated the marital home.

In March 2018, defendant left New Jersey and has not returned since. Defendant claims that he traveled to Israel with plans to return in two weeks but decided to stay indefinitely after he lost his job. Plaintiff certified, however,

A-3629-19

that "passport entry and exit records obtained from the Israel Department of the Interior" confirm that defendant did not travel to Israel and that he likely resides in Houston.

Between May 2017 and June 2018, and prior to the issuance of a court order equitably distributing the parties' marital assets, defendant transferred over $700,000 from the parties' accounts. Around the same time, he also dissipated an additional $145,375 in marital assets. On August 15, 2018, defendant filed a substitution of attorney and has proceeded pro se ever since.

On September 12, 2018, defendant failed to appear at a settlement conference despite notices from the court specifying that attendance was mandatory. As a result, on September 19, 2018, the court issued an order striking defendant's pleadings and entering default judgment pursuant to Rule 1:2-4(a). The order also directed plaintiff to serve defendant with a proposed final judgment and stated that a hearing would be held twenty days after service.

On November 28, 2018, after defendant was duly notified and nevertheless failed to appear at the scheduled hearing, a second judge entered a final judgment of divorce upon consideration of plaintiff's proofs and testimony. In relevant part, the judgment ordered defendant to pay child support and alimony and memorialized that he had pendent lite arrears totaling $42,500. It

also ordered defendant to return marital assets, authorized plaintiff to engage in post-judgment discovery to locate assets that defendant owned or transferred, and granted plaintiff power of attorney to transfer into her name defendant's PricewaterhouseCoopers (PWC) retirement account and other assets she might discover. Finally, the order provided that should defendant fail to comply, the court reserved the right to hold him in contempt, impose sanctions, and issue a bench warrant for his arrest.

The court scheduled a compliance hearing for March 15, 2019. The court notified defendant by email after he refused to provide a current address during a telephone conversation with the court. Defendant responded by fax stating that he could not physically appear at the hearing but could participate by phone, although he did not provide a phone number.

Court staff subsequently emailed defendant twice asking him to contact chambers regarding his request to participate by phone. Defendant responded in a letter, which made several arguments about the case but, again, failed to provide a phone number. The court responded by email stating that it would not consider defendant's letter as he sought to "litigate by letter while keeping [his] whereabouts hidden" and that should defendant fail to appear at the compliance hearing a bench warrant may issue.

A-3629-19

On March 15, 2019, after defendant failed to appear at the compliance hearing, Judge Michael P. Wright entered an order holding him in contempt of court and in violation of litigant's rights, pursuant to Rules 1:10-3 and 5:7-5, for failure to comply with several provisions of the parties' judgment of divorce, including the child support and alimony provisions. The judge ordered that a bench warrant be issued for defendant's arrest and that sanctions be imposed until defendant fully complied with the final judgment of divorce. Judge Wright also granted plaintiff leave to conduct post-judgment discovery, including the issuance of subpoenas, on any person or entity with knowledge of the assets at issue, and awarded plaintiff counsel fees. Although the judge provided his findings on the record, defendant failed to provide us with a transcript of the proceeding.

Plaintiff next filed an emergent application on August 1, 2019 asserting that defendant had been interfering with her attempts to liquidate the PWC account. On August 2, 2019, Judge Wright issued an order to show cause, returnable on August 12, 2019, authorizing plaintiff to liquidate the PWC account and apply the funds to defendant's support arrears in accordance with the final judgment of divorce. He also granted plaintiff power of attorney to execute any necessary documents and directed that any costs or tax

consequences be the responsibility of defendant. The order indicated defendant received notice and that Judge Wright stated his reasons on the record. Defendant again failed to provide us with a transcript of that proceeding.

Judge Wright's chambers provided the August 2, 2019 order to defendant by email. After defendant later emailed the court, Judge Wright noted that defendant's email acknowledged service, and requested that defendant provide a phone number so that he could participate in the scheduled conference. Soon thereafter, defendant sent two letters to Judge Wright accusing him of being a "rubber stamp" for plaintiff's attorney and disputing the merits of several earlier court orders. Neither letter included defendant's telephone number.

Judge Wright subsequently issued an order on August 12, 2019 that addressed many of the issues referenced in the August 2, 2019 order. Defendant did not participate in the August 12th proceeding, nor did he provide us with a transcript of the proceeding or the court's statement of reasons. Defendant did, however, send Judge Wright two more letters complaining that he was not afforded "a meaningful opportunity to participate," and again accused the court of "'rubber stamp[ing]' the 'theft' of [his] retirement money."

In September 2019, defendant emailed his daughter explaining "why [he] decided to stay out of America." He described that he traveled to Israel in March

2018 and decided to stay after he lost his job. He said that his "life in America[] was not worth it anymore" and he "had nothing to return for in New Jersey."

Plaintiff filed a motion on September 5, 2019 seeking, among other things, to liquidate two retirement accounts in defendant's name maintained by his former employer, BDO USA, LLP. In response, defendant filed a cross-motion requesting that the court "deny plaintiff's motion in its entirety," appoint a psychologist to evaluate "plaintiff to ensure her decisions [are] not made under duress," and require a complete accounting of plaintiff's counsel fees. Defendant's certification is absent from his appellate appendix.

Judge Wright ruled on the papers and issued an order on December 12, 2019 authorizing the liquidation of the BDO accounts, adjudicating defendant in violation of litigant's rights, awarding plaintiff counsel fees, and denying defendant's requests. He explained such relief was supported by the court's power to enforce its own orders and provide necessary equitable remedies.

Judge Wright further explained that defendant had not complied with the provisions of the final judgment of divorce ordering him to return the marital assets and pay child support and alimony. He also determined that "it is evident that [defendant] has the ability to comply as he holds retirement accounts with sufficient account balances."

A-3629-19

In support of the counsel fee award, the judge cited Rule 4:42-9 and relied on, among other authority, Yueh v. Yueh, 329 N.J. Super. 447 (App. Div. 2000). Judge Wright found that defendant's "intentional and repeated noncompliance" constituted "inexcusable acts of bad faith warranting a counsel fee award" and that "any claim that he cannot afford same has little relevance in light of the punitive element set forth in Yueh." The judge also included that "it would be hard to fathom that [d]efendant is without financial means having absconded with over $500,000 in marital assets."

In denying defendant's request that a psychologist be appointed to evaluate plaintiff, Judge Wright found that "[n]othing in [defendant's] . . . submission establishes a legal basis for the relief he seeks." Similarly, in rejecting defendant's requests for a complete accounting of plaintiff's counsel fees, he determined that defendant's claims consisted of "naked assertions" that were "wholly unsupported and completely unpersuasive."

Judge Wright also addressed defendant's argument that plaintiff's service by email and by mail to a Houston, Texas post office box was improper. Defendant asserted that service by email violated the Rules, the Houston post office box belonged to his cousin, who agreed to receive mail for him on

occasion, and that plaintiff failed to make a diligent effort to corroborate his regular address.

Judge Wright rejected defendant's argument and found that "[d]efendant's behavior evinces a purposeful attempt to avoid service and all contact with the [c]ourt" and that "[a]s a result, in an effort to afford [d]efendant due process by notifying him of the [c]ourt proceeding, [p]laintiff's counsel served [d]efendant by email." Finally, the judge explained actual notice had been established because defendant responded to plaintiff's motion and other prior emails.

On January 10, 2020, Judge Wright issued an order denying defendant's motion seeking to vacate the September 19, 2018 default judgment, the November 28, 2019 final judgment of divorce, and other orders including those entered on March 15, 2019 and August 2, 2019. Defendant's motion argued that his failure to appear at the September 12, 2018 settlement conference was due to excusable neglect. He explained that the court's notice was sent to his former attorney, who emailed it to him, but that the email did not get his attention. He further asserted that plaintiff had "portrayed a false narrative" about him and that the terms of the final judgement of divorce were unrealistic and unfair given his circumstances.

In denying defendant's requests to vacate the September 19, 2018 order and the final judgment of divorce, Judge Wright first explained the standard to relieve a litigant from a final judgment under Rule 4:50. Judge Wright then found that defendant's overlooking the notice of the settlement conference was not excusable neglect because it was not "'compatible with due diligence or reasonable prudence' as [the] proofs establish[ed] [d]efendant was more than aware that there was ongoing litigation" and that "[d]efendant ha[d] failed to provide persuasive proof regarding any purported misrepresentations nor has his application been supported by evidence of changed circumstances."

Similarly, in declining to vacate the March 15, 2019 and August 2, 2019 orders, Judge Wright found that defendant had "provided absolutely nothing of a persuasive nature establishing a right to relief under R. 4:50-1." The judge also awarded plaintiff counsel fees, relying on the same reasoning accompanying the December 12, 2019 order.

On January 30, 2020, Judge Wright issued an order denying defendant's motion to quash a subpoena plaintiff served on a UPS store that defendant had been utilizing to receive mail and file court documents. The judge concluded that the subpoena, which sought information regarding defendant's whereabouts and financial circumstances, was "neither unreasonable nor oppressive and

further, any burden is substantially outweighed by the benefits of [p]laintiff obtaining information that allows her to rectify the intentional and repeated non-compliance of [d]efendant." Judge Wright also explained that the terms of the judgment of divorce supported his decision. Finally, the judge awarded plaintiff counsel fees, relying on similar reasoning to that provided with the December 12, 2019 order, adding that defendant's motion was "wholly without merit."

In late December 2019, defendant sought reconsideration of the December 12, 2019 order. He requested that the judge amend the order to "[s]pecify the portion of any distribution payment from [d]efendant's BDO retirement monies to plaintiff as 'alimony payment arrears' versus 'child support payment arrears,'" "[p]rovide source for payment of income tax due on taxable liquidation of retirement monies including any interest and penalty and acknowledge mandatory requirement for income tax withholding on any distribution out of [d]efendant's BDO retirement monies," and "[p]rovide legal safeguards, such as a court-protected trust into which monies are deposited, that distribution out of [d]efendant's BDO retirement monies designated as child support arrears must be used for support of three daughters and cannot be paid to plaintiff's legal counsel."

11

Plaintiff first responded by sending defendant a letter demanding that defendant withdraw his motion, pursuant to Rule 1:4-8, claiming that it was "presented for an improper purpose, such as to harass, cause unnecessary delay, and/or cause a needless increase in the cost of litigation." Plaintiff later filed a cross-motion requesting, among other relief, that the court deny defendant's motion in its entirety, enjoin him from filing future motions unless he appears personally before the court, and award counsel fees arising from delays in liquidating the PWC and BDO accounts.

On May 13, 2020, Judge Wright issued an order denying defendant's motion for reconsideration of the December 12, 2019 order, and granting plaintiff's cross-motion in part. In denying defendant's motion, the court explained the standard for reconsideration under D'Atria v. D'Atria, 242 N.J. Super. 392 (Ch. Div. 1990) and reasoned that "the December 12, 2019 [c]ourt [o]rder is not based upon a palpably incorrect or irrational basis, nor does it fail to appreciate the significance of probative, competent evidence" and that the order was "generated to enforce previous [o]rders that this [d]efendant has ignored or purposefully circumvented."

Turning to plaintiff's requests relevant to this appeal, Judge Wright declined to "enjoin [d]efendant from filing future motions unless and until he

appears personally before the court." It stated that "[a]lthough the defendant's filings have clearly become abusive, harassing, and frivolous in nature this application must be made to the [v]icinage Assignment Judge." The judge also awarded plaintiff counsel fees, again, repeating the reasoning of its December 12, 2019 order including that "[d]efendant's intentional and repeated non-compliance . . . are inexcusable acts of bad faith warranting a counsel fee award."

On February 14, 2020, defendant filed a motion to quash a subpoena plaintiff served on Chase Bank on February 7, 2020, which sought information including defendant's "demographic information including his address" and "financial information." Defendant also requested that the court sanction plaintiff's counsel for misuse of post-judgment subpoenas and award costs associated with his motion.

Judge Wright denied defendant's application in a May 18, 2020 order. The order also awarded plaintiff counsel fees and recommended that she make an application before the Assignment Judge for an order precluding similar filings by the defendant. We note that defendant failed to provide a transcript containing the court's statement of reasons with respect to this order.

On February 21, 2020, defendant filed a motion to stay the court's orders allowing for liquidation of defendant's PWC account pending appeal. In the alternative, defendant made several requests that were repetitive of those contained in previous motions including that the court impose a trust to hold his liquidated retirement funds and "provide additional income tax withholding to cover the [ten percent] federal income tax penalty on early withdrawals/liquidation of retirement savings."

In his accompanying certification, defendant asserted that the pertinent orders were issued without the court allowing him to be heard or defend himself. He also claimed that if safeguards were not put in place, plaintiff's lawyer would "take this money from plaintiff as payment of counsel fees" and that "[i]t is unfair and unconscionable to leave [him] without means of paying the tax and penalty due [to the] IRS when this court orders liquidation." Plaintiff cross-moved and requested defendant's motion be denied in its entirety and that counsel fees be awarded.

On May 22, 2020, Judge Wright issued an order denying defendant's motion. Addressing defendant's request to stay the orders, the judge applied the Crowe v. DeGioia, 90 N.J. 126 (1982) standard, and found that defendant had not shown irreparable harm or a probability of success on the merits because the

14

orders were entered to enforce the judgment of divorce and he had not provided any persuasive reason justifying his non-compliance. Judge Wright then explained that defendant's remaining requests were essentially a "camouflaged reconsideration motion filed months beyond the [twenty] day filing . . . deadline mandated by Rule 4:49-2," and that the August 2, 2019 order disposed of defendant's contentions. Finally, the judge awarded plaintiff counsel fees, reasoning, in part, that defendant filed his motion in "absolute bad faith" and that plaintiff's submissions were necessary to enforce previous court orders.

On May 19, 2020, defendant filed yet another motion requesting, in part, to stay the May 18, 2020 order declining to quash the Chase Bank subpoena. We note that defendant listed a Houston post office box as his address with respect to the motion. Approximately two weeks later, on June 2, 2020, defendant filed a motion requesting transcripts at public expense pursuant to Rule 2:5-3.

On June 5, 2020, plaintiff filed a cross-motion before Judge Wright and Judge Stuart A. Minkowitz. In that application, plaintiff requested that defendant be "prohibited from filing any application relative to the distribution of the parties' assets and/or post-judgement discovery until said application has been reviewed and approved for filing by the presiding civil [A]ssignment Judge

15

in Morris County." Plaintiff also requested that a credit of $28,667.34 be applied to defendant's child support arrears, "$16,799 be added to and deemed support arrears," and counsel fees be awarded.

Judge Wright initially scheduled oral argument on the motions and notified defendant by email, but after each side requested at least one adjournment, the judge canceled oral argument, and decided to resolve the motions on the papers.

On August 14, 2020 Judge Minkowitz entered an order denying the portions of plaintiff's June 5, 2020 cross-motion requesting that defendant be prohibited from filing applications unless approved by the Assignment Judge. In his statement of reasons, Judge Minkowitz first explained the standard for issuing an injunction to prevent vexatious litigants from making court filings under Rule 1:33-4(a) and Rosenblum v. Borough of Closter, 333 N.J. Super. 385 (App. Div. 2000). He included that such authority "must be exercised sparingly," and that "[i]t is extraordinarily unusual for a court to prevent a litigant from making filings, especially in a matter in which that litigant remains actively engaged." Applying that standard, the judge denied plaintiff's request, finding her proofs, which included only one motion along with other documents,

16

to be insufficient "to establish that [d]efendant has engaged in a pattern of filing frivolous pleadings."

On October 6, 2020, Judge Wright issued three orders addressing the remaining outstanding motions. First, he denied defendant's motion for transcripts at public expense. In his statement of reasons, the judge first recounted the case's extensive procedural history, noting that "[t]his is the latest in an onslaught of pro se motions." He stated that "[defendant's] defiance of . . . [c]ourt-ordered obligation, his absconding of the country, and his ongoing attempts to thwart [p]laintiff's rights . . . under the divorce decree and subsequent orders are . . . reprehensible." The judge also noted that defendant's location remained concealed.

Judge Wright explained that defendant "fail[ed] to pay the support obligation and asks the [c]ourt to grant him free transcripts pursuant to Rule 2:5-3, despite him fleeing the country with . . . in excess of $655,000 of what should have been . . . equitably distributed during the divorce." Relying on Rule 2:5-3, the court denied defendant's request based on "the absence of . . . any persuasive information provided by the movant regarding . . . his purported indigency." The judge also awarded plaintiff counsel fees, reasoning that "[d]efendant continues to file motion after motion . . . this [c]ourt believes in an effort to

17

financially . . . break the [p]laintiff" and that "the reasonableness and good faith of . . . [d]efendant's position is lacking."

Second, Judge Wright denied defendant's motion to stay the May 18, 2020 order, which declined to quash the Chase Bank subpoena. In reaching that decision, he again applied the Crowe standard and found that defendant failed to establish irreparable harm or a probability of success on the merits considering that defendant was non-compliant and the orders sought to enforce prior court orders.

Finally, the judge granted the portions of plaintiff's cross-motion not disposed of by Judge Minkowitz, crediting defendant's child support arrears with $28,667.34 and adding $16,799 to his support arrears. He explained that the credit represented half of the value obtained from liquidating the PWC account after tax withholdings and that the additional arrears represented two sums previously awarded, as well as unpaid, counsel fees. On the latter point, Judge Wright reasoned that adding the fees to defendant's arrears was appropriate because they had been incurred in large part to enforce defendant's child support obligation. The judge also awarded plaintiff counsel fees related to the June 5, 2020 motion, reasoning that defendant had acted in bad faith and plaintiff's filings were necessary to enforce previous court orders.

A-3629-19

This appeal followed in which defendant argues that the court erred by denying him due process, allowing for liquidation of his retirement accounts, concluding his filings were frivolous and awarding plaintiff counsel fees, allowing plaintiff to issue post-judgment subpoenas, and declining to appoint an expert to examine plaintiff's medical and psychological health.

II.

Our review of the Family Part's orders is limited in scope. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). We owe substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters. Id. at 413. Thus, "[a] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

While we owe no special deference to the judge's legal conclusions, Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378 (1995), "we 'should not disturb the factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence

19

as to offend the interests of justice' or when we determine the court has palpably abused its discretion." Parish v. Parish, 412 N.J. Super. 39, 47 (App. Div. 2010) (alteration in original) (quoting Cesare, 154 N.J. at 412). We will only reverse the judge's decision when it is necessary to "'ensure that there is not a denial of justice' because the family court's 'conclusions are . . . "clearly mistaken" or "wide of the mark."'" Id. at 48 (alteration in original) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

We first note that defendant's appellate submission suffers from numerous significant procedural deficiencies so severe that we could exercise our discretion to dismiss his appeal on those grounds alone. By way of example only, defendant raised several arguments addressing orders not on appeal, contrary to Rule 2:4-1(a). He failed to divide his arguments into appropriate subheadings and, in some instances, to provide adequate citations indicating where his arguments were raised below, contrary to Rule 2:6-2(a)(6). Defendant also failed to include all relevant transcripts, motions, and certifications, contrary to Rules 2:5-3, 2:5-4(a), and 2:6-1(a).

We have nevertheless considered the merits of all defendant's arguments that we could discern from the record presented and conclude that they are without sufficient merit to warrant discussion in a written opinion, Rule 2:11-

20

3(e)(1)(E). We affirm for the reasons expressed in Judge Wright's well-reasoned decisions accompanying the orders on appeal and add the following comments to amplify our decision.

As to defendant's due process arguments, he appears to argue that the court erred by denying him an opportunity to be heard regarding several motions, including those resulting in orders holding him in violation of litigant's rights. We first note that nowhere in defendant's brief does he assert that he was not on notice of any of the relevant proceedings. Indeed, each of Judge Wright's orders indicate that defendant was either on notice or opposed plaintiff's various requests for relief.

Further, defendant's argument is contradicted by his clear refusal, as found by Judge Wright on numerous occasions, to provide the court with adequate contact information. By way of example, before the March 15, 2019 compliance hearing, defendant requested to participate telephonically but refused to provide the court with a phone number and, instead, according to the court, attempted to "litigate by letter while keeping [his] whereabouts hidden."

Similarly, before the hearing on plaintiff's August 2019 order to show cause, the court provided defendant notice and requested his phone number so that he could participate. Defendant again refused to provide a phone number

21

electing instead to send a series of harassing letters addressed to Judge Wright. This led Judge Wright to correctly conclude on December 12, 2019 that "[d]efendant's behavior evince[d] a purposeful attempt to avoid service and all contact with the [c]ourt." Finally, in several instances that defendant references, Judge Wright declined to hold oral arguments and ruled on the papers, which was within his discretion. See Palombi v. Palombi, 414 N.J. Super. 274, 285-86 (App. Div. 2010).

Defendant argues further, relying on Pasqua v. Council, 186 N.J. 127 (2006), that the court erred by issuing a warrant for his arrest in his absence and without alerting him of his right to counsel. Defendant's reliance on Pasqua, however, is misplaced as that case is factually distinguishable. In Pasqua, our Supreme Court held that "at child support enforcement hearings, all parents charged with violating a court order must be advised of their right to counsel." Id. at 153. Here, defendant has never had a child support enforcement hearing, due to his flight from New Jersey and his voluntary decision not to appear at any of the relevant proceedings. Pasqua, therefore, offers no support to defendant's challenge to a duly issued bench warrant, particularly where defendant has been found to have deliberately evaded his court ordered obligations, to which he offers no meritorious substantive challenge.

22

Defendant's contentions regarding the liquidation of his retirement accounts also provide no basis for reversal. While many of his arguments are asserted without a meaningful legal basis, the thrust of defendant's contention is that that the court was without authority to grant plaintiff power of attorney to liquidate his accounts. He is clearly mistaken. Rule 5:3-7(b) provides that when a party violates an alimony or child support award the court may grant "any . . . appropriate equitable remedy." Here defendant was found to be non-compliant with numerous court-ordered obligations and was in significant arrears regarding his child support responsibilities even prior to the parties' final judgment of divorce. The court, therefore, acted within its authority to enforce its own orders when it granted plaintiff power of attorney to liquidate defendant's retirement accounts.

The court also did not abuse its discretion in awarding counsel fees. On this point, defendant contends that Judge Wright erred by determining that defendant's filings were frivolous and in bad faith and awarding counsel fees on that basis. It is clearly within a Family Part judge's discretion to award counsel fees. R. 5:3-5(c); Addesa v. Addesa, 392 N.J. Super. 58, 78 (App. Div. 2007). That determination will be disturbed "only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298,

317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Here, Judge Wright's decision to award counsel fees was supported by defendant's continuous non-compliance and series of meritless motions. Defendant has provided no basis to second-guess the court's well-reasoned decisions.

Defendant's arguments regarding plaintiff's use of post-judgment subpoenas are also procedurally and substantively meritless. Defendant appears to challenge Judge Wright's January 30, 2020 order in which he refused to quash the UPS store subpoena and his May 18, 2020 order refusing to quash the Chase bank subpoena, however, the January 30, 2020 order is not before us, and defendant failed to provide a transcript for the May 18, 2020 order.

Notwithstanding these procedural deficiencies, Rule 5:5-1(d) allows for parties in family actions to engage in discovery with leave of court. Here, plaintiff's subpoenas complied with Rule 5:5-1(d) because they were specifically authorized by the parties' final judgment of divorce and Judge Wright's March 15, 2019 order. The authority defendant cites in opposition provides no support for his challenge to any of the court's orders.

Finally, defendant's request that the court appoint an expert to evaluate plaintiff's decision-making is simply without any legal or factual support. Rule

24                                                                                           A-3629-19

5:3-3(a) provides courts with discretion to appoint an expert to examine a litigant if it "concludes that the disposition of an issue will be assisted by expert opinion." Here, we found no basis to conclude that Judge Wright abused his discretion in refusing to appoint an expert to evaluate plaintiff.

To the extent that we have not addressed any of defendant's remaining arguments it is because we found them so meritless that we need not address them in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

25